WASHBURN & MOEN MANUF'G Co. *v.* HAISH.

WASHBURN & MOEN MANUF'G Co. and another *v.* SAME.

(*Circuit Court, N. D. Illinois.* February 21, 1881.)

1. RE-ISSUES NOS. 6,902, 6,913, AND 6,976—BARBED-WIRE FENCES—VALIDITY—MOTION FOR REHEARING.

Upon a motion for a rehearing, on the ground that the re-issued letters patent Nos. 6,902, 6,913, and 6,976, for improvements in barbed-wire fences, in suit, are invalid, not being for the same inventions as their respective originals, such re-issues *held valid,* and motion *overruled.*

2. PATENT NO. 67,117 — RE-ISSUE NO. 6,976 — CONSTRUCTION — LIMITATION.

Original letters patent No. 67,117, granted July 23, 1867, to William D. Hunt, claiming the method of "providing the wires of a wire fence with a series of *spur wheels,*" the claim in the re-issue thereof, No. 6,976, dated March 7, 1876, to Charles Kennedy, assignee, for "a fence-wire provided with *spurs,*" cannot be *enlarged* to include every kind of barb that may be attached to fence wire, but is *limited* to the fence wire and spurs described in the original patent.

3. SAME—SPUR-WHEEL BARBS—HUNT'S DEVICE.

Hunt's invention consists of spur-wheels having sharpened spurs with holes in their centers to permit the fence wire to pass through them, and fitting the wire loosely to revolve upon it, or kept in their places at suitable distances apart by flanges.

4. RE-ISSUE No. 6,902—PATENT No. 74,369—VALIDITY.

Re-issued letters patent No. 6,902, granted Michael Kelly, February 8, 1876, which claims two methods of keeping the barbs or thorns of a wire fence rigid upon the wire, viz.: (1) By lateral compression after the barbs are strung upon the wire; and (2) by laying another wire of the same or different size along-side the thorn wire and twisting the two together,—*held valid*, though the first only was claimed in the original patent, No. 74,369, granted February 11, 1868, to Michael Kelly, the latter method, however, being shown in its drawings.

5. SAME—DIAMOND-SHAPED BARBS—KELLY'S DEVICE.

Kelly's invention consists of diamond-shaped barbs or thorns cut out of metal, and strung on fence wire at a certain distance from each other, and kept rigid upon the wire by lateral compression, or by twisting a single wire with one containing the barbs or thorns upon it.

6. RE-ISSUE No. 6,913—COILED-WIRE BARBS—GLIDDEN'S DEVICE.

The invention secured by re-issued letters patent No. 6,913, granted February 8, 1876, to Joseph F. Glidden, in suit, consists of a fence wire having a barb formed of a short piece of pointed wire secured in place upon the wire by coiling between its ends, forming two projecting points.

Motion for Rehearing.

*Coburn & Thatcher*, for complainant.

*Manday, Evarts & Adcock*, for defendant.

Before DRUMMOND and BLODGETT, JJ.

DRUMMOND, C. J.   This is a motion for a rehearing for the alleged reason that the three re-issued patents considered in the former opinion*—the Hunt, No. 6,976, Kelly, No. 6,902, and Glidden, No. 6,913—are invalid as not being for the same inventions as their respective originals.

In order to give a proper construction to these patents and their re-issues we must consider the state of the art, and the object which the inventors proposed to accomplish. Wires had been used for fencing for many years before the date of these patents, and they were made single or double, of single wires or of single wires twisted together. These did not fully answer the purpose, as it was not difficult for cattle to push through them. These inventors desired to place something on the wires which would deter stock from attempting to break through, and that was accomplished by arming them with barbs or sharp points which would prick the cat-

*4 FED. REP. 900.

tle. It would seem to follow from this statement of the case, and in view of the further fact that it had been common to arm various fences other than wire with points or prickers, that it was not competent for any inventor to do more than to claim his own special method of forming and affixing the barb which he had devised.

Applying these principles to the Hunt original and re-issued patent, we can give to them a proper construction. Hunt invented a particular kind of spur-wheel, which he strung upon the wires of a fence, a description of which he gives in his original specifications. They were small-spur wheels, the spurs being sharpened; the wheels were provided with openings at their centers for the wire to pass through. Comparing the text of the original and re-issue together, it will be seen that the original Hunt patent was for a "new and useful improvement in fences." The same is stated in the re-issue. The material differences between the specifications of the original and re-issue seem to be these: In the re-issue it is said, referring to the drawing: "D represents single spurs secured to the wires." That is not in the original specifications. In the original specifications it is said: "The spurs fit the wire loosely, so as to revolve easily upon it." In the re-issue "the spur-wheels *may* fit the wire loosely, so as to revolve easily upon it." In the original it says: "The spurs may be kept in their places, or at suitable distances apart, by means of flanges." In the re-issue reference is made at the end of the word "flanges" to a letter A, contained in the drawings. In the original the claim is: "Providing the wires of a wire fence with a series of spur-wheels, substantially as and for the purposes set forth." In the re-issue the claim is: "A fence wire provided with spurs for the purpose specified." While it is true that in the re-issue it is said D represents single spurs secured to the wire, and they are contained in the drawings of the re-issue, yet the drawings of the original patent contain single spurs, represented on the wire. The same is in the re-issue, although no reference is made to them in the specifications.

Considering the drawings, the specifications, and the

claims of Hunt's original and re-issue patent, can we construe the claim in the re-issue as including anything more than the special spur or barb which he had described in the first instance? I think not; although the claims are somewhat differently worded in the two cases,—in the one instance, "providing the wires of a wire fence with a series of spur wheels;" and in the other, "a fence wire provided with spurs for the purpose specified." We think we shall not construe this last claim independent of the description of the spurs set forth in the specifications, and they are substantially the same as described in the original patent. In comparing the claim of the re-issue with that of the original, we assume they mean substantially the same thing, and that the claim in the re-issue cannot fairly be enlarged to include every kind of barb that may be attached to a fence wire, but that "the fence wire provided with spurs" means the kind of fence wire and of spurs that he had described in his specifications and drawings. The claim in the re-issue ought, in this case, to be construed with reference to the limitation of the invention in the original patent.

The difference of the phraseology in the original and re-issued specifications, where in the former it says, "the spurs fit the wire loosely, so as to revolve easily upon it; * * * the spurs may be kept in their places and at suitable distances apart by means of flanges or otherwise;" and in the latter, "the spur-wheels *may* fit the wire loosely, so as to revolve easily upon it, or they may be kept in their places and at suitable distances apart by means of flanges, A, or otherwise,"—cannot change the nature of the invention described. I do not understand that this language in the re-issue necessarily implies that the spur-wheels are fastened to the wire, so as to prevent them from revolving, nor am I prepared to admit, if that were the fact, it would change the essential character of the device.

The object of the Kelly patent was also to describe and claim a particular mode of constructing the barb, and attaching it to the wire of the fence. And the drawings of the original patent clearly indicate that this was done upon a single

or a double wire. The patentee intended that these barbs should be stationary upon the wire. Nothing need be said of anything described or claimed in the patent except what refers to the wire and barb part of the fence. The peculiarity of the barbs of this fence is that they are cut in a diamond form from a plate, by machinery or othewise, and each provided with a hole, so as to be strung on the wire at proper distances apart, and then they are compressed laterally upon the wire, by a blow of a hammer or otherwise, so as to fasten them upon the wire.

The following are the material differences between the original and the re-issue of the Kelly patent: In speaking of figure 1 of the drawing the re-issue refers to the use of single wires, and of figure 2 as a double wire. The drawings in both re-issue and original are the same, and these words, single and double wire, are additions in the specifications of the re-issue. In the re-issue, in speaking of the desirableness of increasing the strength of the wire, the word "can," used in the original, is left out in the re-issue; and instead of saying, "I can lay another wire," the re-issue says, "I lay another wire." In speaking of the representation in figure 2, in the re-issue, it says, "it locks the thorn;" the words in the original being, "it tends to insure a regularity in the distribution of the points in many different directions;" and in the re-issue, "it locks the thorn, and *also* tends to insure a regularity in the distribution of the points in many different directions."

In the original there are three claims. The third claim is identical in the original and in the re-issue. In the original the first and second claims read:

"*First*. The thorns, E, produced by dies or otherwise in the form substantially as represented, and adapted to be secured in place upon a wire by compression, latterly, both of the thorn and wire, as and for the purposes herein set forth.

"*Second*. The thorns, E, and wire, D, combined in the manner represented, and adapted for use in a fence as herein set forth."

In the re-issue the first, second, and fourth claims read:

"*First*. I claim the combination substantially as described of the fence wire, D, and a series of thorns, E, rigidly fixed thereto, for the purpose herein set forth.

"*Second.* I claim a wire, D, and a series of fixed thorns thereon, in combination with supporting posts, C, substantially as and for the purposes set forth."

"*Fourth.* I claim the combination substantially as described of two wires, D, D, twisted together, and a series of thorns, E, strung upon one of said wires and held in position by them, as and for the purpose set forth."

With this statement of the differences between the original and the re-issue, it cannot be said that there is anything claimed in the first three claims of the re-issue essentially different from those in the original. The fourth claim in the re-issue is not a claim in the original, but the two wires referred to in that claim as twisted together, with a series of thorns or barbs attached to one of the wires, is clearly set forth in the drawing of the original patent; and, if that constituted a part of his invention, and if it was not claimed through mistake or inadvertence, I know of no good reason why the claim in the re-issue should not be corrected by the drawings of the original patent. The words in the specifications of the re-issue that "it locks the thorn," are only a description of the effect produced by this mode of placing his peculiar barb on one of the wires twisted together.

Glidden, in his original patent, described the use of two wires coming together at various points, at which spurs are coiled around them, and which are spread apart between the coils so as to prevent the latter from moving longitudinally on the wires. Equidistant between the posts is a slotted tube containing a coiled spring, the object of which was to keep the wires at a proper tension as affected by heat or cold. This original patent was re-issued in divisions. Division A describes and claims a barb, consisting of a short wire pointed at both ends, coiled around and compressed about one or more strands of fence wire. The number of coils is not material. He says by this method he can put his barbs on wires already placed in the fence, or before they are there placed. The claim in this re-issue is—

" In combination with a fence wire, a barb formed of a short piece or pointed wire, secured in place upon the fence wire by coiling between its ends, forming two projecting points, substantially as specified."

In the original he says:

"I do not claim to have originated the devices known as spurs of prongs on the wires, they having been used before, and confine myself to the means for holding the spurs at proper intervals upon the wires, and to the means for obtaining uniform tension of the wires as claimed."

And the claim in the original is—

"The combination of two wires, B, C, slotted tube, G, coiled spring, I, and post, K, for keeping the wires at a proper tension in various temperatures, as described and shown."

In the original patent he does not describe in the specifications the peculiar manner in which the barb is formed and coiled around the two wires, further than by a reference to the drawings. In division A of the re-issue he describes his barb as consisting of a short wire, pointed at each end, and wrapped or coiled around the fence wire or wires at proper intervals, leaving projecting ends as shown. These barbs, which he claims in the re-issue as his own special mode of construction and attachment, are described in the drawings of the original, the only difference being that in the re-issue C, at figure 3, sets forth a barb with one more twist than in the original; but obviously the mode of constructing and attaching the barbs to the wire are substantially the same. We have assumed that it is entirely competent for a patentee to correct in a re-issue by the drawings any mistake made in the original, and we think, therefore, that if Glidden was the inventor of the peculiar mode of constructing and attaching the barb which is described in the drawing of the original, and in division A of the re-issue, he had the right to it in his re-issue and to claim it. We admit there is not a very great distinction between this mode of constructing and attaching the barbs and others which existed before. If this were an entirely new and original question, without the action so long continued of the patent-office—without such a business having grown up in relation to it as now exists,—for it must not be forgotten that the inventors of these barbs have created a new branch of industry, have been the instruments by which barbed wire fencing has come into such general use,—we

might be inclined to take a different view of this claim of Glidden for this mode of constructing and attaching barbs.

But it will be recollected that the view which we have taken of these inventions, connected with the wire fence, is confined to the mode of constructing and attaching the barbs; and if a person who has invented and describes a particular form of barb, and a particular mode of attaching it to the wire, is entitled to a patent, we do not know why Glidden cannot be to this form of barb and mode of attachment, for the same reason that Kelly and Hunt were entitled to a patent. We cannot overlook what has been done. The immense number of patents that have been granted for peculiar modes of constructing barbs and attaching them to wire fences, and considering the success which has followed this barb of Glidden's,—although it may be, as was stated in the former opinion, near "the border line" between mechanical skill and invention,—yet we feel inclined to sustain it.

We have carefully examined the case cited, and decided at the present term by the supreme court of the United States—*The Swain Turbine Manuf'g Co.* v. *Ladd.* The principle frequently decided by that court, that the re-issue must be for the same invention as that shown in the original, is emphasized with special force in that case; but we do not find it lays down any new rule, and especially comparing it with one decided at the same term—*Ball* v. *Langles,* 18 O. G. 1405. In relation to the power of the commissioner of patents to determine whether there has been an accident, mistake, or inadvertence in the original patent, we are not disposed to change the rulings we have made upon the various claims and re-issues in this case.

We hold, therefore, as we construe the originals and re-issues, there is nothing contained in the claims of the re-issues which is not set forth in the specifications or drawings of the original patents. So far as there may be anything in the original opinion which may be construed to mean or imply that Hunt patented and had a valid claim to any and every form of barb upon a fence wire, this opinion is intended as a modification of the same.