MILLER v. RIVERSIDE STORAGE & CARTAGE CO.

1. MASTER AND SERVANT—DEATH—WORKMEN'S COMPENSATION—INDUSTRIAL ACCIDENT BOARD—DEPENDENTS.

It is a question of fact, from testimony that is in conflict or sustains different inferences, whether a claimant under the workmen's compensation act, not among those who are conclusively presumed to be dependent, was actually in the dependent class. (Act No. 10, Extra Session 1912.)

2. SAME—EVIDENCE—KIN.

Testimony to prove that a deceased brother contributed to claimant's support, though she partially sustained herself by her labors as a stenographer, reviewed on certiorari to the Industrial Accident Board, and held, to sustain its award of compensation.

3. SAME.
    The test of dependency is not whether the members of the
        family could support life without the contributions of de-
        cedent, but whether they depended on him for part of their
        income or means of living.

Certiorari to the Industrial Accident Board. Sub-
mitted October 19, 1915. (Docket No. 155.) Decided
December 21, 1915.

Blanche Miller presented her claim against the Riv-
erside Storage & Cartage Company and another for
compensation for the death of her brother. From an
award granted by the accident board, respondent
brings certiorari. Affirmed.

*Clark, Lockwood, Bryant & Klein,* for claimant.

*Florian, Moore & Wilson,* for defendants.

OSTRANDER, J. Thomas Miller was employed by the
Riverside Storage & Cartage Company at a wage of
$15.50 per week. He died from an injury found to
have been sustained by him in the course of and grow-
ing out of his employment; the injury being received
September 2, 1914. Claimant is his sister. Whether
she was dependent upon him, within the meaning of
the statute, is the question presented; it being claimed
there was no evidence of dependency. The award of
the committee of arbitration was approved by the In-
dustrial Accident Board. The award was:

"That the said applicant, Blanche Miller, is entitled
to receive and recover from said respondents, River-
side Storage & Cartage Company and London & Lanca-
shire Guarantee & Accident Company the sum of three
($3) dollars per week for a period of three hundred
(300) weeks, from the 2d day of September, 1914,
and that said applicant is entitled to receive and
recover from said respondents on this date thirty-
three dollars, being the amount of such compensation
that has already become due under the provisions of

law, the remainder of said award to be paid to said Blanche Miller, applicant, by said respondents in weekly payments, commencing one week from the date of the award."

Whether one is or is not dependent upon another for support is, of course, a fact. By the terms of the act persons standing in certain relations to a deceased employee are conclusively presumed to be wholly dependent upon him 'for support. Claimant is not one of them, nor were there any such dependents of the deceased employee. She is, however, a person who may be a dependent. It is provided that, if the employee leaves dependents only partly dependent upon his earnings for support at the time of his injury, the weekly compensation to be paid (by the employer) shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependent bears to the annual earnings of the deceased at the time of his injury. Questions as to who constitute dependents and the extent of their dependency are to be determined as of the date of the accident to the employee, and their right to any death benefit becomes fixed as of such time, irrespective of any subsequent change of conditions.

Testimony for the claimant, who is 22 years old, tended to prove that from the time he was 16 or 17 years old her deceased brother, who was 7 years her senior, had contributed to her support. Claimant went to Detroit when she was 18 years of age, and, with her brother's aid, educated herself to be a stenographer. She was employed by one concern some 2½ years, first at $8 a week, then at $10, and for some time before her brother was injured at $12 a week. She lost some time, but was paid her full salary. She quit work in August, 1914, going on a visit to her old home in Colorado, and was in Colorado when her brother was in-

jured. She testifies that her brother regularly gave her $6 a week until she left Detroit. He then gave her $75 for her journey. From February 8, 1913, to August 17, 1914, claimant had on deposit in a savings bank $70. She took music lessons "off and on" while in Detroit, and, not being strong physically, paid out considerable money, the last in May, 1914, for medical attention. At the hearing in December, 1914, she was employed at $10 a week. She went to Colorado, she says, for rest, being nervous and not doing her work well. The deceased brother received as much as $18, a week at one time at one place where he worked in Detroit. He received occasionally tips, or extras, she says, while employed by the respondent. Claimant paid for room and breakfast and dinner $5 a week; for lunches 25 cents each; for car fare 75 cents a week. She purchased clothing during the period from September, 1913, to September, 1914, $112.25. She made a visit to Pennsylvania during the time she lived in Detroit. She did no work while upon her last visit to Colorado, and paid nothing for board or room. She received nothing during that period from her brother. The arrangement they had made was that he was to go to Colorado and return to Detroit with her. Upon cross-examination she computed her expenses for the year ending in September, 1914, including room, food, clothing, and street car fare, at $489.25. And counsel say that, being in a position to earn, and earning, when at work, a sum equal to $520 or more annually, she was not, upon her own computation and statement, dependent upon any one; she was independent.

It is probable that in every case where a brother or sister of a deceased employee claims relief under the statute the evidence of dependency will necessarily be evidence of contributions made by the deceased, because in such cases the support furnished by either to the other, or the service rendered by either to the

other, will be voluntary. But voluntary contributions of money, support, or service by a brother to a sister, or by a sister to a brother, are not necessarily evidence of the dependency of either, or of the extent of dependency, within the purview of the statute. The legislature has not defined "dependent;" it is probable that no standard for the determination of dependency, in fact, can be formulated. In a case in which a father sought compensation on account of the death of a son who had contributed to his father a certain average sum weekly, it was said that the question is whether the father

"made a loss by the death of his son, in consequence of there no longer being a source of assistance to him from his son's earnings in the work at which he was killed, and on which source, from his own inability to earn wages himself, he was wholly or partially dependent." *Arrol & Co., Ltd., v. Kelly,* 7 F. 906, 42 Sc. L. 695.

In *Simmons* v. *White Bros.,* 80 L. T. 344, 1 W. C. C. 89, and in *Main Colliery Co., Ltd.,* v. *Davies,* 2 W. C. C. 108, one or more of the judges were of opinion that:

" 'Dependent' probably means dependent for the ordinary necessaries of life for a person of that class and position in life."

So in *Howells* v. *Vivian & Sons,* 85 L. T. 529, 4 W. C. C. 106, it was said:

"The test of dependency is not whether the family could support life without the contributions of the deceased, but whether they depended upon them as part of that income or means of living."

These expressions, called out by the facts of particular cases, do not supply a rule. As cases arise, in some of which the facts are held not to prove, and in others to be consistent with, dependency, debatable ground will be narrowed. Unless a standard of independence for unmarried women who work for and live upon wages can be set up which classes as independent all

who earn $10, or even $12, a week, or more, it cannot be said there was no testimony tending to prove the dependency of claimant. It is manifest there are many women who regard themselves as independent, who live wholly upon their wages, who receive a smaller weekly wage. According to the report of the commissioner of labor published in 1915, there were employed in Detroit 1,974 female stenographers who received wages; the average daily wage being $2.22. In 2 cities only out of 60 in the State reported is there paid a higher average daily wage. Assuming six days a week's work, the average wage per week was $13.32. This is more than claimant ever received, and more than $3 per week more than she was earning when her deposition in this case was taken. That she can maintain herself upon the wages she is getting is probably true, at least with good, or fair, health. She says she has not good health, and an agent of her former employer testified that she is nervous and excitable.

Upon all of the testimony, the arbitration committee and the Industrial Accident Board held that she was partly dependent upon her deceased brother. I do not think it clear that the finding is wholly unsupported by testimony.

It follows that it should be and is affirmed.

BROOKE, C. J., and PERSON, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.