JAMES J. CONNERS, ADMINISTRATOR, &c., PETITIONER, v. PUBLIC SERVICE ELECTRIC COMPANY, PROSE-CUTOR.

Submitted March 16, 1916—Decided June 8, 1916.

1. The provision of the Workmen's Compensation act with relation to weekly wages being taken to be six times the average daily earnings for a working day of ordinary length, excluding overtime, is confined to cases where the rate of wages is fixed by the output of the employe, and does not refer to cases where he received a fixed wage per day.

2. Where death results immediately from an accident, compensation under the Workmen's Compensation act should begin at the time of the death. The provision of section 13 of the act, providing that compensation shall not begin until two weeks after the accident, should be read in connection with section 14, and has no application to cases where deceased was killed instantly.

3. There is no provision in the Workmen's Compensation act authorizing the trial court to fix a specific day upon which the weekly compensation shall be paid. Where such a requirement would inconvenience the defendant an application for modification should be made to the trial court. Such a requirement is not sufficient ground for reversal.

4. Paragraph 19 of the Workmen's Compensation act provides that action under that act where death results from the injury shall be brought by the executor or administrator of deceased, or in case there is none, by such person as would be entitled to administration.

5. Paragraph 12 of the Workmen's Compensation act of 1911, relative to compensation to be paid to dependents in case of death, was amended by the act of 1913 (*Pamph. L.*, p. 302), and instead of specific percentages applied to specific groups of dependent relatives, substituted percentages based on the varying number of actual dependents within the degrees of consanguinity or limits of affinity set out in the act. Whether or not such persons are actual dependents is a question of fact.

6. Where an adult son gave all his money, which was more than the value of his board and lodging, to his mother for the common fund of the family, some of whom were themselves working— *Held*, that the family were deprived of the benefit of the wages of deceased by his death and all were actual dependents within the meaning of the act.

On *certiorari*.

Before Justices PARKER, MINTURN and KALISCH.

For the prosecutor, *Leonard J. Tynan.*

For the petitioner, *Charles M. Egan.*

The opinion of the court was delivered by

PARKER, J. This is a workmen's compensation case. The suit is brought for the benefit of the father, mother and sister of the deceased, all of whom claim to be dependents.

The first point made is that the court had no evidence before it to justify a finding that the wages of the deceased were $11.94 a week. There was such evidence in the shape of a letter written by an authorized agent of the defendant company stating that fact. In addition to this, it appeared that the deceased had been taken on in one department at $1.75 a day, and worked for six days a week in that department, and that he was afterwards transferred to another department where he worked seven days a week at the same rate of $1.75, or $12.25 a week, if he worked steadily. Counsel seems to rely on the provision in the statute with relation to weekly wages being taken to be six times the average daily earnings for a working day of ordinary length, excluding overtime, but this provision is confined to cases where the rate of wages is fixed by the output of the employe and does not refer to cases where he received a fixed wage per day.

The next point is, that there was error in the determination requiring the compensation to begin at the time of the death of the deceased, in view of the provision of section 13 of the act, that compensation shall not begin until two weeks after the injury. This section is to be read in connection with section 14, which relates to the furnishing of medical attention and medicines, and, in our judgment, is confined to cases where death does not occur. In the present case the deceased was killed instantly, and so the provision of holding up the compensation for two weeks has, as we think, no application.

The third point is, that there was error in providing that the weekly payments should be made on Saturday of each and every week, commencing with the 11th day of December.

We know of no provision in the statute which authorizes the court to require payments to be made upon a specific day of the week, but this question is comparatively unimportant. If it were made to appear that such a requirement gave inconvenience or trouble to the defendant, in view of its system of making payments, an application to the trial court would no doubt dispose of the difficulty. We do not think it requires at this time either a reversal or modification of the judgment below.

The fourth point raises the question whether the action was properly brought by the administrator of the deceased. As to this counsel relies on section 19 of the act, which provides that where no executor or administrator is qualified, the judge shall by order direct payment to be made to such person as would be appointed administrator of the estate of such deceased, &c. This provision of the act plainly contemplates the institution of the proceeding by the executor or administrator of the deceased, where there is an executor or administrator, and if there is none, by such person as would be entitled to administration. There is an administrator in the present case and plainly the suit was properly brought by him. See *McFarland* v. *Central Railroad Co.*, 84 *N. J. L.* 435.

The next point raises the question whether the father and mother and sister of the deceased were actual dependents in the sense intended by the statute. The trial court held that they were actual dependents, relying on the case of *Havey* v. *Erie Railroad Co.*, 87 *N. J. L.* 444, decided by this court. That case was governed by the act as it stood before the amendment of 1913; was reversed in the Court of Errors and Appeals (88 *Id.* 684), and differs on the facts. It is necessary, therefore, to examine these differences with care. In both the act of 1911 and in the amendment of 1913, paragraph 12 begins thus:

"In case of death, compensation shall be computed, but not distributed, on the following basis:

"(1) Actual dependents."

They proceed, respectively, thus:

(Act of 1911.)                    (Amendment of 1913.)

"If orphan or orphans, a minimum of 25% * * *.

"If widow alone, 25%.

"If widow and one child, 40%," and so on.

"For one dependent, 35% of wages.

"For two dependents, 45% of wages," and so on. * * *

"The term 'dependents' shall apply to and include any or all the following who are dependent on the deceased at the time of his death, namely, * * * parents * * * sisters * * * provided that dependency shall be presumed as to * * * children under the age of 18 years * * *."

The facts in the Havey case were that deceased was a minor, and so his father, the petitioner, was legally entitled to his wages and bound to furnish support; that there were several minor brothers and sisters, mostly of tender age. This court held that actual dependency was a question of fact, and, in applying paragraph 12 of the act of 1911, relied on the clause providing for "minor or incapacitated brothers and sisters." 87 *N. J. L.* 446. The reversal in the Court of Errors and Appeals went upon the ground, as we understand it, that the brothers and sisters were not legally dependent on deceased, because he was under no obligation to support them, and were not dependent on him in fact, because they were dependent upon the father who was entitled to use the wages of deceased to support them; so that the direct dependency was upon the father. " 'Benefit' and 'dependence' " said the court, "are not synonymous words;" by which we understand that

benefit does not necessarily imply dependency, though it may be said to be an essential element of it.

The facts in the present case are quite different, as well as the statute. Instead of specific percentages applied to specific groups of dependent relatives, we have percentages based on the varying number of actual dependents within the degrees of consanguinity or limits of affinity set out in the act. In the case at bar, there is no question about the relationship, but only as to actual dependency. The clause of 1911, about minor brothers and sisters, is gone, so the question of minority *vel non* of the sister of deceased, who was working as a stenographer, and, as to whose age there seems to be no proof, is out of the case. There is a clause in the act of 1913 (at *p.* 306) relating to "orphans or other children," but this manifestly relates to children of the deceased and not to brothers or sisters.

As to the facts, we note that the deceased was over age, and therefore entitled to his own wages; that as a voluntary matter he turned his wages into the family fund; and there was evidence justifying a finding that the sister, whether an adult or a minor, received substantial benefit therefrom, of which she has been deprived since his death. This, in turn, justified a finding that she was an actual dependent. We do not understand the decision of the Court of Errors and Appeals in the Havey case to mean that a minor sister cannot be classed as a dependent of a deceased adult brother because she has a father who is under obligation to support her. Such a ruling would shut out the minor brothers and sisters in a case, for example, where the father was incapacitated and earned nothing, and the adult brother was the sole support of the family. So, also, if she was of age, her actual dependency is a pure question of fact, to be determined by the test laid down by the opinion of this court in the case of *Hammill* v. *Pennsylvania Railroad Co.,* 87 *N. J. L.* 388, adopted in the Court of Errors and Appeals, 88 *Id.* 717, viz.:

"We understand the phrases 'actual dependent' and 'who are dependent upon deceased,' as used in paragraph 13 of the act as amended, to mean relatives in some degree mentioned

in that paragraph, who were being wholly or to a substantial degree supported by the deceased at the time of his death." We also went on to say that there was evidence justifying the finding of that fact by the trial court, and that is also the situation in this case.   It is true that the father himself worked and made $26.40 a week, and the mother and sister also worked.   That does not alter the situation that the earnings of the deceased went to the general support of the family; and that the amount he contributed, as found by the court (and the finding was supported by evidence), was more than his board and lodging and other expenses amounted to.   The father testified that deceased gave all his money every week to his mother, and that it was more than the cost of his keep, so that it was a legitimate inference that the family was deriving substantial benefit from the fact that he remained living there and voluntarily gave all his wages into the common fund.

The other points made are covered by what has just been said.   The judgment will be affirmed.