Gonzales v. Chino Copper Co., 29 N. M. 228

[No. 2794.    Jan. 12, 1924.]

## GONZALES v. CHINO COPPER CO.

### SYLLABUS BY THE COURT

1. The theory upon which the Workmen's Compensation Acts of the several states have been adopted was to substantiate a more humanitarian and economical system of compensation for injured workmen or their dependents in case of death; to provide a speedy and inexpensive method by which such compensation might be made, which is more in harmony with modern methods of industry than the common-law liability for torts, which usually involved long, tedious, and expensive litigation. In addition, it was thought the industry to which the employee contributed his labor should bear the expense of such economic burdens which become a legitimate part of the commercial life and is borne by the consuming public because the cost thereof is added to the cost of the article. and, in the final analysis, is borne by the community at large.

2. For such reasons a liberal construction in favor of a claimant under the terms of such act should be favored. as the theory of the legislation is compensation, not the lack of it.

3. "Dependency," under the terms of such act, does not necessarily depend upon whether or not a given claimant could support himself without the earnings of the deceased, or whether he could have so reduced his living expenses that he could have been supported independent of such earnings; but it depends upon whether or not the deceased had actually contributed to the support of such claimant, and whether or not he relied upon the same for his livelihood.

4. In the absence of a statute declaring a certain state of relation to conclusively establish dependency, whether or not a given claimant is a dependent is a question of fact.

5.  Findings of the trial court that a given claimant was dependent upon the deceased, if supported by substantial evidence, will not be disturbed on appeal.

6.  The father and mother of an unmarried son, without children, are dependent upon him where the father is an able-bodied man, 42 years old, physically able to work and earn a living for himself and wife, who has been employed for a certain company for more than 10 years, and who is discharged from such employment about two months prior to the death of the son, due to the curtailment in the operations of such company, with the promise that as soon as enlarged operations are resumed he will be re-employed, who is unable to secure employment where he resides, and has no money with which to go elsewhere in search of employment, and, under such circumstances, the son furnished the sole support of said parents upon which they relied from the time of such discharge until the death of the deceased.

Appeal from District Court, Grant County; Ryan, Judge.

Proceeding under the Workmen's Compensation Act by Miguel Gonzales for the death of his son, opposed by the Chino Copper Company, employer. From a judgment for claimant, the employer appeals. Affirmed.

Percy Wilson, of Silver City, for appellant.

The sections of the Workmen's Compensation Act that are applicable to this case are Subsections 4 and 6 of paragraph "j" of Section 12 of Chapter 83 of the Laws of New Mexico, 1917 Session, and Subsection 2 of Subsection "a" of Section 17 of Chapter 83 of the same laws as amended by Section 1 of Chapter 184 of the Laws of New Mexico, 1921 Session.

It was held by this court in Merrill v. Penasco Lumber Company, 27 N. M. 632, that actual dependency within the meaning of the Workmen's Compensation Act is a question of fact to be determined by the circumstances in each case and, under the circumstances in this case, I think it can safely be said that to hold the parents entitled to compensation for the death of the deceased son would be giving the statute a far broader meaning than was intended by the Legisla-

ture. Gherardi v. Connecticut Company, 103 A. 668; Benjamin F. Shaw & Co. v. Palmatory, Delaware, 105 A. 417.

N. D. Meyer, of El Paso, Texas, for appellee.

All that is required is that the parents be actual dependents, and if the court in Merrill v. Penasco Lumber Company, 27 N. M. 632, held the facts in that case sufficient to prove dependency with what greater force is actual dependency proved in the case at bar when actual dependency was absolute.

It might be argued that the mother of the deceased was not dependent upon him for support because the legal obligation to support rested upon her husband, but the rule is that even though one has a legal right to support from another, if that other fails in that obligation and the claimant is actually supported by one who has no legal obligation to give that support, claimant is a dependent of the one actually rendering the support. Corpus Juris, Workmen's Compensation Acts, pp. 57, 58, 61, notes 81 and 81a; Rintoul v. Dalmeny Oil Co., 1 BWCC 340; Kenney's case, 111 N. E. 47; In re Herrick, 104 N. E. 432; Dazy v. Apponaug Co., 36 R. I. 81; Mahoney v. Gamble-Desmond Co., 96 Atl. 1025; Erickson v. American Well Works, 196 Ill. A. 346; In re McMahon, 118 N. E. 189; Note in Vol. 16, Negligence Compensation Cases, p. 175; Mallers v. Industrial Board of Illinois, 117 N. E. 1056; People's Hardware Co. v. Croke, 118 N. E. 314; In re Peters, 116 N. E. 848; Bloomington-Bedford Stone Co. v. Phillips, 116 N. E. 850, and cases cited in Corpus Juris supra.

OPINION OF THE COURT

BRATTON, J. This is a case arising under the Workmen's Compensation Act (Laws 1917, c. 83). It was originally brought upon behalf of the father, mother and sister of the deceased, all of whom claimed to be his dependents, but during the trial it was abandoned as to the sister, and proceeded as to the father and mother.

Miguel Gonzales, Jr., was accidentally killed at Hurley, N. M., on March 14, 1921, in the course of his employment as a common laborer for the Chino Copper Company. At that time he was a youth between 16 and 17 years of age. He was unmarried, and had no children, and resided in the home with his surviving parents and sister. At the time of the death of the deceased his father was an able-bodied man 42 years of age, physically able to work and earn a livelihood for himself and wife. The mother of the deceased was then 36 years of age, and their only other child was a daughter, Teresa Gonzales. For more than 10 years prior to the death of the deceased his father had been employed by the Chino Copper Company, earning a regular wage as a common laborer. During January, 1921, the father was discharged from such employment due to curtailment in the operations of said company, and from that time until the death of the deceased the said father had not been employed, and had no income whatsoever. He made only one effort to obtain employment, and that was without success. The undisputed evidence in the record shows there was no other place near Hurley where employment could be had, and the father had no money with which to leave and go elsewhere in search of employment. Due to these conditions, both parents were entirely supported by the wages earned by the deceased from the time the father was so discharged until the decedent's death; the undisputed facts being that the mother took his pay checks as they were issued, and with the proceeds paid the household expenses, thereby maintaining the home of which the deceased was a member.

In due time this proceeding was instituted in compliance with the provisions of chapter 83, Laws of 1917, and chapter 44, Laws of 1919 (chapter 184, Laws of 1921, not being in force at the time of the accident and death of the deceased), in which all facts leading up to and surrounding the decedent's death were fully set forth, plus the further fact that the claimants were actual dependents upon him at the time of his death.

By answer the appellant admitted all the facts except the dependency of the appellees, which they specifically denied.

A trial before the court resulted in special findings of fact and conclusions of law, upon which judgment was rendered in favor of the claimants, from which this appeal was seasonably perfected.

[1] 1. It may well be kept in mind that the theory upon which the Workmen's Compensation Acts of the several states were adopted was to substitute a more humanitarian and economical system of compensation for injured workmen or their dependents in case of their death; to provide a speedy and inexpensive method by which such compensation might be made to such employees or those dependent upon them and which is more in harmony with modern methods of industry than the common-law liability for torts, which usually involved long, tedious and expensive litigation, and often produced ill feeling between employer and employee. In addition, it was designed to substitute a more uniform scale of compensation in cases of accidental injury or death than the ordinary varying and widely divergent estimates of juries, and to avoid the application of certain well-established rules of law which oftentimes worked seeming harsh results, the most common of which was that of contributory negligence. If the employee knew of the danger of the employment he was held to have assumed the consequential results therefrom, and to be responsible for any calamity arising from such conditions. And we think we are well within the realm of human experience when we say that a workman, being dependent upon the fruits of his labor to support himself and those dependent upon him, was often tempted to and did incur risks to which, as a matter of humanity he should not be exposed. But, viewing the question from a purely legal standpoint, if he took and continued in such employment with such knowledge, he must trust to himself to keep clear from injury, and his failure to do so

precluded any recovery for resulting death or injuries. Unfortunately, workmen would assume such employment with such knowledge of danger, and where injured or killed there existed no legal right to recover damages therefor, with the result that they or their dependents were frequently charitable charges upon the community.   To obviate these conditions it was thought the industry to which the employees contributed their labor should bear the expense of all such economic burdens which become a legitimate part of the commercial life as the "overhead" cost.   They might be catalogued with breakage and wear and tear of machinery and equipment, all of which are, in the final analysis, borne by the community, and such compensation may safely be said to be a charge upon the community rather than the industry, because the expense thereof is always included in the sale price of the commodity, and hence is paid for by the consuming public.   It is merely an element in the cost of production added to the cost of the article and borne by the community in general.

[2] With these elevating and progressive considerations which prompted the passage of this class of legislation in mind, we think a liberal construction in favor of a claimant under its terms should be favored, as the theory of the legislation is compensation, not the denial of it.   Such a claimant no longer has the common-law right to sue in tort to recover damages for wrongful injury or death, as that right is abrogated by such statutes, and he is relegated to the terms of the Compensation Act for all remuneration ever obtainable for the wrongful or negligent death of the "breadwinner."

2. The serious question presented by the parties is whether or not, under the facts, the claimants were dependents of the deceased at the time of his death in the sense intended by section 12 (j), subsec. 4, of chapter 83, Laws of 1917, and subsection 7 of section 17 (a2), as amended by chapter 44, Laws of 1919.   The former of these declares and defines a parent or grandparent

to be a dependent and consequently entitled to compensation if actually dependent, in whole or in part, upon the deceased, provided there be no widow, widower, or children. The latter provides for the payment of certain sums to the father or mother or the survivor of them, if dependent to any extent upon the workman for support at the time of his death, provided there be no widow, widower, or children.

[3-5] In the absence of a statutory provision definitely declaring a certain state of relation to conclusively establish dependency, whether or not a claimant is a dependent is a question of fact. Merrill v. Penasco Lumber Co. et al., 27 N. M. 632, 204 Pac. 72. In this case, the trial court found the mother and father of the deceased were dependent upon him at the time of his death, and such a finding must remain undisturbed, if supported by substantial evidence. The undisputed evidence is that the father had been retired from employment from the Chino Copper Company on account of curtailment in its business operations; that said company had promised it would re-employ him as soon as enlarged operations were resumed. He made one effort to obtain employment elsewhere, which was unsuccessful; there was no other work to be had at or near Hurley, and he had no money with which to go elsewhere, and had no other income or means of support whatsoever. With these conditions existing, the deceased devoted his entire wages to their support, and they depended upon such for their maintenance. Dependency does not necessarily depend upon whether or not the claimants could support themselves without the earnings of the deceased or whether they could have so reduced their living expenses that they could have been supported independent of such earnings. To the contrary, it depends upon whether or not the deceased had actually contributed to their support and whether or not they relied upon such earnings in whole or in part for their livelihood. Merrill v. Penasco Lumber Co. et al., supra. In 1 Honnold, Workmen's Compensation, 225 it is said:

"It follows that dependency does not depend on whether the alleged dependents could support themselves without decedent's earnings, or so reduce their expenses that they would be supported independent of his earnings, but on whether they were in fact supported in whole or in part by such earnings, under circumstances indicating an intent on the part of deceased to furnish such support."

A splendid statement of the exact rule applicable here, and which seems to be supported by authorities, may be found in 28 R. C. L. 779, wherein this language is used:

"Whether a parent is dependent upon his or her child is a question of fact, which is to be determined from the circumstances of the particular case. Dependency may be predicated of the support furnished by a minor child as well as one that is an adult, and a state of dependency may exist although the applicant was living with the other spouse, and was supported in part only by the child's earnings. And it is not essential to show exactly what proportion of the parent's living expenses was contributed by the child. Inasmuch as dependency is not based upon absolute necessity, a father may be found to be dependent upon the earnings of a son who had given his wages to the father, although the latter might also be earning wages which could have supported him and his family."

In harmony with the text referred to, it is well said in Appeal of Hotel Bond Co., 89 Conn. 143, 93 Atl. 249:

"A dependent under the act is not necessarily one to whom the contributions of the injured or deceased workman are necessary to his or her support of life; the test is whether the contributions were relied upon by the dependent for his or her means of living, judging this by the class and position in life of the dependent."

The facts in Conners v. Public Service Electric Co., 89 N. J. Law, 99, 97 Atl. 792, were that the single son earned $11.94 per week, which he contributed to the general support of the family, consisting of his father, mother, and sister. The father earned a weekly salary of $26.40 and the mother and sister also worked. It was held that, notwithstanding such facts, they were partially dependent upon the deceased, and consequently entitled to compensation. It was there said:

"It is true that the father himself worked and made $26.40 a week, and the mother and sister also worked. That does not alter the situation that the earnings of the deceased went to the general support of the family, and that the amount he contributed, as found by the court (and the finding was supported by evidence), was more than his board and lodging and other expenses amounted to. The father testified that deceased gave all his money every week to his mother. and that it was more than the cost of his keep, so that it was a legitimate inference that the family was deriving substantial benefit from the fact that he remained living there and voluntarily gave all his wages into the common fund."

In re McMahon, 229 Mass. 48, 118 N. E. 189, presents facts somewhat similar to those involved in the case before us. There a single son 22 years old had contributed $27 to the purchase of certain articles of furniture for the household, and had saved $288.87, which he intended to devote to making certain alterations in the house. The court held the father was a partial dependent, and in so holding said:

"As to the father's dependency: Dependents are defined by the statute as 'members of the employe's family or next of kin who were wholly or partly dependent upon the earnings of the employe for support at the time of the injury.' The finding of the board that the father, Francis J. McMahon, was partially dependent for support upon his son James E. must stand if there was any evidence to warrant that finding. Diaz's Case, 217 Mass. 36, 104 N. E. 384. The contribution of $27, even though given for the purchase of certain articles of household furniture, could be adjudged a contribution to the 'support' of his father. And, while dependency implies that the father relied on this son for support or help to a substantial degree, partial dependency within the meaning of the statute may be found to exist, even though the father could have subsisted without any aid from his son, and the son was under no legal obligation to furnish it."

This case was followed in Day et al. v. Sioux Falls Fruit Co., 43 S. D. 65, 177 N. W. 816. The deceased was 22 years, unmarried, and had no children. He lived with his family, consisting of the father, mother, a 17 year old sister, a married sister whose husband was in France, and who received an allotment of $40 per month; that said married sister and her baby were temporarily residing with said family due to the absence of her husband, and she contributed about $10 per month

to the maintenance of the home; the father was 44 years old, in good health, and earned regularly wages of $110 per month. The boy had made a very few contributions to the family and yet it was held the mother and father were partially dependent upon him, and hence entitled to compensation. The Supreme Court of South Dakota said:

"The question then is, "Were these parents dependent for support, in whole or in some substantial part, upon said deceased son at the time of his death? We are of the opinion that the evidence shows actual dependency. Where persons of limited means, such as respondents, and otherwise entitled to compensation, had actually received contributions for support from the wages of the deceastd employee, such facts would constitute evidence strongly tending to establish dependency."

Another interesting case upon this subject is Miller v. Riverside Storage & Cartage So. et al., 189 Mich. 360, 155 N. W. 462. There a sister 22 years old claimed to be dependent upon her brother, who, at the time of his death, earned a weekly wage of $15.50. The claimant was a stenographer, and had been employed in that capacity for about four years prior to the death of the deceased, and received for such services from $10 to $12 per week. Shortly before the decedent's death the claimant quit her employment in Detroit and went to Colorado to rest and recuperate from a nervous trouble, and was there at the time of the deceased's death. Some time before that she had made a visit to Pennsylvania, and otherwise enjoyed a reasonably comfortable life, and had a small savings account in the bank. She received regular assistance from the deceased, and it was held that, under these circumstances, she was dependent, and as such was entitled to compensation.

[6] Appellant contends that to hold the claimants here were dependents within the provisions of the statute will encourage parents to pamper their children in habits of non-exertion, and might promote slothfulness rather than a disposition to earn a livelihood. To sustain such contention, the cases of Gherardi v. Con-

necticut Co., 92 Conn. 454, 103 Atl. 668, and. Shaw Co. v. Palmatory et al., 7 Boyce (Del.) 197, 105 Atl. 417, are cited. Neither of these cases is in the least similar to the case at bar. In the former the claimant was a son 22 years of age. The father and son lived together, both boarding. The father was killed on December 26, 1915. At that time the son was working for another company. He had followed the same line of employment as his father, but had given it up and turned to other channels. The father had contributed $25 during the previous June and $35 during the previous September to the son's expenses, but had contributed nothing during the months of October, November, and December. The facts in the latter case were that the decedent, at the time of his death, was 18 years old; the family consisted of the father, mother, a brother 24 years of age, who was in France, and a sister 13 years old, who attended school. The deceased had worked since he was 9 years old, and at the time of his death, was receiving an average wage of $21.60 per week. Since he first began work he gave his entire wage to his mother, who gave him spending money, purchased his clothes, and used the balance to pay house rent. The father earned between $25 and $30 per week, and used his money to pay the store and fuel bills, provide clothing for himself, and sometimes gave some money to his wife. No showing was made with respect to the disposition of the balance of such wages. The mother of the deceased had been working for three months prior to his death at a weekly wage of $13.60. Under these circumstances it was held in both of the foregoing cases that the claimants were not dependents. We think a mere statement of the facts will serve to clearly distinguish each of these from the case at bar. If not, then we respectfully depart from them.

All of the necessary elements to constitute dependency within the intendment and purpose of the statute are present. The deceased was actually contributing to the claimants' support, in fact, he was furnishing

their sole support, and they were relying upon such contributions for their livelihood.

The judgment of the lower court, being correct, should be affirmed; and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.