KOPPANG, APPELLANT, v. SEVIER, RESPONDENT.

(No. 7,470.)

(Submitted December 17, 1936. Decided January 11, 1936.)

[53 Pac. (2d) 455.]

*Messrs. Foot, Aronson & Foot,* for Appellant, submitted a brief.

236

*Messrs. Logan & Child,* for Respondent, submitted an original and a supplemental brief; *Mr. E. M. Child* argued the cause orally.

*Mr. Henry McClernan,* Special Assistant Attorney General, appearing as *Amicus Curiae,* submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of dismissal entered on motion for a judgment on the pleadings.

The important allegations of the complaint are to the following effect: On July 27, 1934, A. A. Koppang, now deceased, was in the employ of the Montana state highway commission as a flagman on United States highway No. 2 in connection with an oiling project then in progress. He was stationed at the east end of the project. It was his duty to stop all traffic, to hand a card of instruction to drivers of all vehicles entering on the part of the highway under improvement, and to collect similar cards from drivers of all vehicles passing out of the project limits. Defendant was traveling eastward; he was stopped and given a card at the west end of the improvement section and thereupon drove toward the east. Koppang endeavored to stop him at or near the end of the project in order to take up the card. In such effort Koppang was struck by the car and killed. The other allegations of the complaint are unimportant here.

The pertinent part of the answer consists of an allegation that the widow of Koppang, plaintiff here, made application to the Industrial Accident Board for, and was receiving, compensation from the state of Montana under the terms of the Workmen's Compensation Act. The reply in effect admitted payment of the compensation, but denied that the receipt thereof constituted a bar to the maintenance of the action.

Defendant tendered a motion for judgment on the pleadings on the stated ground that the acceptance of the compensation was a bar to the action, and that therefore the complaint did not state a cause of action. The motion was granted, and judgment entered accordingly; hence the appeal.

Appellant's brief succinctly states the issue in the following way: "The sole question is whether the appellant, who has received compensation, has the right to maintain an action against a tort-feasor not subject to the provisions of the Com-

pensation Act. To the extent of one-half of the amount paid by the Industrial Accident Board to the appellant, said board, as insurance carrier, is subrogated, and is therefore an interested party."

This appeal presents, not a new question in this jurisdiction, but rather a familiar matter under conditions substantially different from those existing on previous occasion when the court was called on to decide like issues. The important factors now involved are tendered by a recent enactment of our Legislative Assembly. None of the cases previously considered were affected by Chapter 138, Laws of the Twenty-Third Legislative Assembly 1933. That chapter reads as follows:

"Section 1. That Section 2839 of the Revised Codes of Montana of 1921 be, and the same is hereby amended to read as follows:

" 'Section 2839. Where both the employer and employee have elected to come under this Act, the provisions of this Act shall be exclusive, and such election shall be held to be a surrender by such employer and such employee, as between themselves, of their right to any other method, form or kind of compensation, or determination thereof, or to any other compensation, or kind of determination thereof, or cause of action, action at law, suit in equity, or statutory or common-law right or remedy, or proceeding whatever, for or on account of any personal injury to or death of such employee, except as such rights may be hereinafter specifically granted; and such election shall bind the employee himself, and in case of death shall bind his personal representative, and all persons having any right or claim to compensation for his injury or death, as well as the employer, and those conducting his business during liquidation, bankruptcy or insolvency. Provided, that whenever such employee shall receive an injury while performing the duties of his employment and such injury or injuries, so received by such employee, are caused by the act or omission of some persons or corporations other than his employer, and where the cause of such injury has no direct connection with his regular em-

ployment, and does not arise out of or necessarily follow as an incident thereof, then such employee, or in case of his death his heirs or personal representatives, shall, in addition to the right to receive compensation under the Workmen's Compensation Act, have a right to prosecute any cause of action he may have for damages against such persons or corporations, causing such injury. In the event said employee shall prosecute an action for damages for or on account of such injuries so received, he shall not be deprived of his right to receive compensation but such compensation shall be received by him in addition to and independent of his right to bring action for such damages, provided, that in the event said employee, or in case of his death, his personal representative, shall bring such action, then the employer or insurance carrier paying such compensation shall be subrogated to the extent of one-half (½) of the gross amount received by such employee as compensation under the Workmen's Compensation Law. All expense of prosecuting such action shall be borne by the employee, or if the employee shall fail to bring such action or make settlement of his cause of action within six (6) months from the time such injury is received, the employer or insurance carrier who pays such compensation may thereafter bring such action and thus become entitled to all of the amount received from the prosecution of such action up to the amount paid the employee under the Workmen's Compensation Act, and all over that amount shall be paid to the employee. In the event that the amount of compensation payable under this Act shall not have been fully determined at the time such employee shall receive settlement of his action, prosecuted as aforesaid, then the Industrial Accident Board shall determine what proportion of such settlement the insurance carrier would be entitled to receive under its right of subrogation and such finding of the Board shall be conclusive. Such employer or insurance [carrier?] shall have a lien on such cause of action for one-half (½) of the amount paid to such employee as compensation under the Workmen's Compensation Act, which shall be a first lien thereon.'

"Section 2. In any such action brought by an employee, all defenses that would be available to defendant but for the Workmen's Compensation Act shall be available as defenses in such action.

"Section 3. All Acts and parts of Acts in conflict herewith are hereby repealed.

"Section 4. In order that this Act may correct an existing unjust condition, this Act is hereby deemed and declared an emergency Act which shall be in full force and effect immediately from and after its passage and approval."

The previous decisions of this court involving the matter now under consideration are *Bruce* v. *McAdoo*, 65 Mont. 275, 211 Pac. 722; *Black* v. *Northern Pacific Ry. Co.*, 66 Mont. 538, 214 Pac. 82, both decided long before the enactment of the 1933 Law, and *Clark* v. *Olson*, 96 Mont. 417, 31 Pac. (2d) 283, 285, which arose under the provisions of the old law and although tried in the district court before the 1933 enactment, was not finally decided until after that enactment. It is not necessary to review again the legal considerations which controlled those decisions. The opinions contain able and comprehensive discussions of the general subject, with abundant citation of authority. They doubtless declared the law as it then existed.

It is interesting to observe that the Olson opinion, having been written after the passage of the 1933 Act, took cognizance thereof and discussed the principles involved. In making plain the logic of certain features of the Workmen's Compensation Act, the court said: "The spirit of the law is that an employee is to be guaranteed compensation for all injuries incident to the particular employment received in the course of the employment. To illustrate: An employee in his regular employment may be injured by an independent agency having no connection with the employer or his business. That appears to be the case here. The wrongdoer in such case may be financially responsible, and yet he may not—in most cases he is not. In either case the employee receives compensation from the agency set up by the state. If it were otherwise, the employee, unable

to obtain any recompense from the irresponsible tort-feasor, would be left without compensation for his injury. That situation can no longer exist under the Compensation Act. * * * The real purpose of the Compensation Act, whether it be called a Compensation Act or an Employers' Insurance Act * * * was, not that one employee should receive an exorbitant or liberal sum and another an inadequate amount, but that all employees should receive a fair measure of compensation. Whether the Legislative Assembly shall permit double compensation to the employee—the payments allowed by the Compensation Act and also the right to sue a tort-feasor—is a matter of legislative control." Again, with reference to the 1933 law, then enacted but not controlling, it was said: "No good reason appears why an employee should not be accorded the right to maintain an action against a tort-feasor not subject to the provisions of the Act, preserving to the employer the right of subrogation to a portion of the compensation received from the third party." The opinion then proceeded to call attention, not only to the fact that the Legislative Assembly had passed such an Act, but to the further fact that the new law did not come in time to aid the plaintiff, and that therefore the case then under consideration had to be decided on the law as it was when the accident occurred.

Turning to the 1933 Act, we must observe the admonition of section 10519, Revised Codes 1921, which reads as follows: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (See, also, *Montana Beer Retailers' Protective Assn.* v. *State Board of Equalization,* 95 Mont. 30, 25 Pac. (2d) 128, and cases cited.)

It is not without significance that the legislature included in the new Act a section declaring the measure an emergency Act in order promptly and without delay to correct "an exist-

ing unjust condition.'' (Laws 1933, Chap. 138, sec. 4.) It will be important to observe what unjust condition it was intended to correct. There is but one inevitable conclusion, and that is that the rule laid down in the previous cases, that a workman could not accept compensation under the Workmen's Compensation Act and at the same time maintain an action against an independent tort-feasor, was unjust, and that such condition of the law constituted the unjust condition thereafter to be avoided.

The chapter in question amended section 2839 of the Revised Codes of Montana of 1921. The language of the old section was adopted in its entirety, except in the forepart of the section, specifically in the phrase where it was provided that the election to come under the Act should be held to be a surrender by employer and employee of their right to any other method or form of compensation, etc. The words ''as between themselves'' were inserted, so that it indicated that there was no intention to impose a waiver in any other manner than as between the parties, employer and employee. The other changes were included in provisos which followed such amended language of the old section, and which provide: ''That whenever such employee shall receive an injury while performing the duties of his employment and such injury or injuries so received by said employee are caused by the act or omission of some persons or corporations other than his employer, and where the cause of such injury has no direct connection with his regular employment, and does not arise out of or necessarily follow as an incident thereof, then such employee, or in case of his death his heirs or personal representatives shall in addition to the right to receive compensation under the Workmen's Compensation Act have a right to prosecute any cause of action he may have for damages against such persons or corporations causing such injury.'' The part of the provision just quoted is followed by a condition that, in the event an employee shall prosecute an action for damages, etc., he shall not be deprived of his right to receive compensation, but may receive compensation in addition to and independent of his right to bring such action for

damages, and provided, further, that the employer or insurance carrier paying such compensation shall be subrogated to the extent of one-half of such gross amount.

It then becomes apparent, finally, that the purpose of the new Act was to achieve the very purpose mentioned in the *Clark* v. *Olson Case*, supra; that is, to allow an employee under certain circumstances to enforce and collect compensation from two different sources.

Counsel in their briefs and arguments devoted much time and effort to technical analyses of the phraseology of the chapter, and particularly attempted to construe the words "cause of such injury," "caused by the act or omission of some person * * * other than his employer," "no direct connection with his regular employment," "does not arise out of or necessarily follow as an incident thereof," etc. We do not attach great importance to this technical phase. The words must be understood in the light of the full context of the chapter and construed in accordance with the statutory rules already mentioned. To put it in another way, they must be taken to mean something practical, reasonable and consonant with the declared intention of the legislative body. For construction of similar provisions, compare *Landeen* v. *Toole County Refining Co.*, 85 Mont. 41, 277 Pac. 615, and cases cited.

Defendant insists that the reference to Chapter 138, made in the *Clark* v. *Olson Case*, was not for the purpose of illustrating any principle of law, but merely for the purpose of reciting some legislative history. The answer to that is that, if Chapter 138 had been the applicable law of that case, the results would very likely have been different. That was really what the language of the opinion indicated.

It must be apparent to anyone that the chapter could have no application to either case unless the injured parties were respectively engaged in the work of an employer under the Workmen's Compensation Act. The chapter is in fact a part of the Act itself, and only affects those who are under the jurisdiction of it. The only reason why the state, employer or in-

surance carrier assumes liability at all where an injury is caused by the act or omission of a third party not connected with the employment is, as was said in *Clark* v. *Olson*, supra, that the state, employer or insurance carrier may guarantee recompense to an employee injured by an independent, but irresponsible, tort-feasor in the course of the employer's work. The simple, plain and motivating reason for the extension of that protection against an outside danger may be said to be that a workmen's presence at a particular time and place—the scene of the accident—for his employer's purposes rather than his own, constitutes a sufficient reason for the extension of what otherwise might be termed "extraordinary protection or coverage." It is argued that there is a difference as to the legal status between the deceased flagman and the Billings street sweeper. We are unable to distinguish any material difference in legal effect, for the purposes of the two cases, between the duties of a street sweeper and a flagman. Neither do we see any difference between the legal rights and obligations of the drivers. To attempt to classify "employees" so as to put them in different legal categories would seem to us to be unreasonable and supertechnical. It is our settled conviction, derived from an understanding of the Act, which must be read together as a whole, and every provision and part thereof given proper and harmonious consideration, that the legislature intended to insure to anyone who might subsequently be found in the position of either employee a cause of action against an independent tort-feasor for his own benefit, in supplement of regular compensation under the Workmen's Compensation Act, but subject to the restrictions and requirements thereof.

Strictly speaking, it may be said that the expense or cost of insurance coverage as contemplated by the Act in its primary purpose was only to be assumed by employer, insurer or state sufficient to compensate in cases where no outside or independent factors contributed to an injury; but the extension of the additional feature, more far-reaching and comprehensive in protective effect, demanded compensating consideration and re-

quired contribution by the actual independent tort-feasor. And so the law now provides that the insurance carrier under the plan in effect must receive a part of whatever may be recovered from the third party; this, in compensation for the additional liability, and in recompense for amounts paid to the employee in a case where the injury results in whole or in part from the intrusion of some extrinsic element into the situation as it otherwise would have existed between employer and employee.

In the construction of the provisions of Chapter 138, now a part of the general Compensation Law, we are governed by the admonition of section 2964, Revised Codes 1921, a section of the original Act as it was passed by the legislature in the first instance. That section makes liberal construction a specific mandate. The courts of this state have consistently obeyed that mandate and specifically recognized the principle in the *Clark* v. *Olson Case,* giving explicit reasons and citing controlling authority for the conclusion there announced. In connection with the principle of liberal construction, it has often been pointed out by this court, and very recently stressed, that an important feature of the compensation plan is found in the fact that industry should care for its own man power wrecked by reason of laboring in the industry, just as it must bear the expense of wreckage of machinery used in the same manner (see *Meznarich* v. *Republic Coal Co.,* ante, p. 87, 53 Pac. (2d) 82), all of which we heartily approve; but that does not carry us to a point where we must say that industry is always required to stand the expense of wreckage by independent tort-feasors, or that workmen under the Act must be held to waive and forego causes of action arising out of something entirely foreign to the risk involved in their ordinary duties in order to avail themselves of the benefits of the Workmen's Compensation Act. Fortunately the legislature was possessed of the power to control that situation, as was pointed out in the *Clark* v. *Olson Case;* but unfortunately, as we then suggested, the relief did not come soon enough to aid Clark. Here such relief is not only appropriate, but timely.

It was error to grant the motion for judgment on the pleadings.

The judgment is reversed.

Mr. Chief Justice Sands and Associate Justices Matthews, Anderson and Morris concur.

Rehearing denied January 28, 1936.