TABOR ET UX., PLAINTIFFS, *v.* INDUSTRIAL ACCIDENT FUND, RESPONDENT.

No. 9157.

Submitted April 25, 1952. Decided August 21, 1952.

247 Pac. (2d) 472.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Charles V. Huppe, Mr. Thomas F. Joyce, Asst. Attys. Gen., for appellant.

Messrs. Coyle & Ybarra, Butte, for respondent.

Mr. W. E. Coyle and Mr. Joyce argued orally.

MR. JUSTICE ANGSTMAN:

John Leo Tabor lost his life while employed by the F. & S. Trucking Company of Butte. At the time of his death he was 17 years and 9 months of age. His death was caused by an accident arising out of and in the course of his employment.

His employer was operating under plan 3 of the Workmen's Compensation Act. R. C. M. 1947, secs. 92-1101—92-1123.

At the time of his death John Leo was living with his parents at 1752 Oregon Avenue, Butte.

Plaintiffs, who are his father and mother, filed claim for compensation with the industrial accident board as major dependents.

Hearing was had before the board and the board rejected the claim.

Plaintiffs appealed to the district court and the court allowed the claim.

242

The facts are that plaintiff John Edward Tabor at the time of the death of John Leo Tabor was earning $500 per month plus his meals.

When John Edward Tabor accepted his employment as chef at the Finlen Hotel in Butte, he arranged for the employment of John Leo through Mr. Finlen who is part owner of the F. & S. Trucking Company as well as owner of the Finlen Hotel. Deceased had worked 9 days before he was killed and was receiving $12 per day. The Tabors had four other minor children besides the deceased. When John Leo Tabor accepted his employment he agreed to pay to his parents the sum of $40 per week. The board found, "That decedent had agreed to pay over to his parents, claimants herein, the sum of $40.00 per week, from his earnings."

But the board found that claimants' financial condition was ■ such that the income earned by John Edward Tabor was ample to provide their accustomed mode of living without assistance from decedent, and denied their claim. The court on the same facts reached a contrary conclusion and awarded the maximum compensation of $22 per week for 500 weeks.

Since the facts are not in dispute the only question is one of law. Ross v. Industrial Accident Board, 106 Mont. 486, 80 Pac. (2d) 362; Edwards v. Butte & Superior Mining Co., 83 Mont. 122, 270 Pac. 634. In other words the single question is, do the undisputed facts show that plaintiffs are major dependents within the meaning of our statute, sec. 92-414, R. C. M. 1947.

The Workmen's Compensation Act must be liberally construed to accomplish its intended purpose, and construed in favor of the injured workman and his dependents. Koppang v. Sevier, 101 Mont. 234, 53 Pac. (2d) 455; Tweedie v. Industrial Accident Board, 101 Mont. 256, 53 Pac. (2d) 1145; Grief v. Industrial Accident Fund, 108 Mont. 519, 93 Pac. (2d) 961; Geary v. Anaconda Copper Mining Co., 120 Mont. 485, 188 Pac. (2d) 185; Edwards v. Butte & Superior Mining Co., supra.

The majority of the courts throughout the country give a ■ liberal interpretation to the meaning of the word "de-

pendent'' as used in Workmen's Compensation Acts. The rule is stated in 58 Am. Jur., Workmen's Compensation, sec. 163, p. 686, as follows: ''* * * in a majority of jurisdictions the view seems to have been accepted that dependency within the terms of the statute does not mean absolute dependency for the necessities of life, but rather that the applicant looked to and relied on the contributions of the workman, in whole or in part, as a means of support and maintenance in accordance with his or her social position and accustomed mode of life. A person may be a dependent, according to this view, although able to maintain himself without any assistance from the decedent. Even though the person furnishing the support has a smaller income than the alleged dependent, this will not necessarily prevent the existence of a condition of dependency. The test is not in a comparison between the relative ability of the contributor and the alleged dependent, but in the latter's reliance upon the former for maintenance, in whole or in part.''

Since decedent had agreed to contribute $40 per week to ▉▉ his parents, they were fully and reasonably justified in looking to and relying on these contributions as a means of support and constitutes them dependents within the majority view above stated. We have adopted the majority view in this state. Ross v. Industrial Accident Board, supra.

Nor is the result changed by the circumstance that decedent had worked but a few days before he was killed and actually had made no contribution before his death. Edwards v. Butte &. Superior Mining Co., supra; Ross v. Industrial Accident Board, supra, nor by the fact that the father receives a good income and that the family undoubtedly can get along without the contribution. Waite v. Industrial Commission, 68 Ariz. 299, 205 Pac. (2d) 579; Ross v. Industrial Accident Board, supra; Edwards v. Butte & Superior Mining Co., supra.

Morgan v. Butte Central Mining & Milling Co., 58 Mont. 633, 194 Pac. 496, 498, relied on by appellants is not applicable here. There it was an alleged minor dependent who was claiming compensation.

Under the law then in effect a minor dependent was one who was an invalid. The court in that case said: "The only question before us, therefore, assuming that an invalid brother over the age of 16 years is entitled to compensation, is: Was the finding of the board that claimant was not, at the time of the injury, an invalid within the contemplation of the act, supported by any substantial evidence?"

What the court said to the effect that voluntary contributions were not necessarily evidence of dependency was intended to refer only to a minor dependency, that is, one who was incapacitated or an invalid. The Morgan case cites Miller v. Riverside Storage & Cartage Co., 189 Mich. 360, 155 N. W. 462, as authority but in the Miller case the court actually held that voluntary contributions there shown were sufficient to show dependency.

The Michigan court specifically approved the rule from Howells v. Vivian & Sons, 85 L. T. 529, 4 W. C. C. 106, as follows: "The test of dependency is not whether the family could support life without the contributions of the deceased, but whether they depended upon them as part of that income or means of living."

The court did not err in awarding compensation to plaintiffs as dependents and the judgment is affirmed.

ASSOCIATE JUSTICES METCALF, BOTTOMLY and FREEBOURN, concur.

MR. CHIEF JUSTICE ADAIR, (dissenting).

On June 28, 1950, John Leo Tabor, aged seventeen years and nine months, was accidentally killed by the overturning of a truck which he was driving while in the employ of the F. & S. Contracting Company of Butte, Montana, which company was enrolled under Plan 3 of the Workmen's Compensation Act.

The decedent left no surviving wife, child or invalid brother or sister, hence he left no beneficiary and no minor dependent as those terms are defined in the Workmen's Compensation Act, R. C. M. 1947, secs. 92-413 and 92-415.

The decedent was a son of John Edward Tabor and Alviva

Tabor who, claiming to be major dependents of their decedent son, made claim under the Workmen's Compensation Act.

The term "major dependent" as employed in the Workmen's Compensation Act has been defined by the legislature in what is now section 92-414, R. C. M. 1947, as follows: "Major dependent defined. 'Major dependent' means if there be no beneficiary as defined in the preceding section, the father or mother, or the survivor of them, *if actually dependent upon the decedent at the time of his injury,* then to the extent of such dependency, not to exceed, however, the maximum compensation provided for in this act." Emphasis supplied.

To avail oneself of the benefit of the foregoing statute, *actual dependency* of the claimant upon the decedent *at the time of his injury* is an indispensable requisite. Betor v. National Biscuit Co., 85 Mont. 481, 485, 486, 280 Pac. 641.

In my opinion the evidence introduced before the board wholly fails to show that either the father or the mother of the decedent was *"actually dependent upon the decedent at the time of his injury"* or at any other time.

The evidence shows that on January 19, 1931, the claimants John Edward Tabor and Alviva Thorson Tabor intermarried at Great Falls, Montana, where they established their home and lived until March 15, 1949.

It is the law of this state that the husband, if able to do so, must support himself and wife out of his property or by his labor. R. C. M. 1947, sec. 36-103.

During the time that the claimants lived in Great Falls, two sons and three daughters were born to them.

It is likewise the law of this state that the parent entitled to the custody of a child must give him support and education suitable to his circumstances. R. C. M. 1947, sec. 61-104.

While residing in Great Falls the husband and father, John Edward Tabor was employed as chef in a leading hotel of that city for which services he was paid wages of $325 to $350 per month.

Entirely from his wages so earned the husband supported

himself and wife and gave support and education to his children suitable to his circumstances thus fully performing his obligations as prescribed by sections 36-103 and 61-104, supra, during the time he resided in Great Falls.

On March 15, 1949, the husband gave up his Great Falls job and with his wife and children moved to Butte where he was employed by the leading hotel in the latter city as its chef for which he was paid wages of $500 per month plus his meals.

The evidence is undisputed that entirely from the wages so paid him for his services as chef after coming to Butte, John Edward Tabor supported himself and wife and gave support and education to his children suitable to his circumstances at all times from March 15, 1949, to July 17, 1950, the date whereon his son John Leo entered the employ of the F. & S. Contracting Company. Thus again the husband and father fully performed the obligations imposed upon him by the provisions of sections 36-103 and 61-104, supra.

On June 28, 1950, the day whereon the son, John Leo received his fatal injuries, he, together with his sisters, Geraldine aged 19 years, Marlene aged 16 years, and Marjory aged 15 years, and a brother Theodore aged 10 years, all lived with their parents at 1752 Oregon Avenue in Butte. At the time of the fatal accident neither the surviving son Theodore nor any of his sisters were contributing anything toward the support of their parents or the family. The oldest daughter Geraldine was then employed as cashier of the hotel that employed her father. Her wages were $125 per month but she contributed nothing toward the support of her parents or the family. Her father testified: "It takes all her money to buy clothes for work and bus fare."

The claimant father further testified that prior to the time his son John Leo entered the employ of the contracting company, the son had no earnings from which to make any contributions toward the support of his parents or the family. As to decedent's earnings the father testified:

"Q. Mr. Tabor, before getting this job at the F. & S. Company, had your son been employed? A. No, just little odd jobs.

"Q.   Did he have any earnings at all from these odd jobs? A.  Maybe a dollar or two that didn't amount to much, you know, maybe cleaning somebody's sidewalk off after school. He didn't have much time, you know.

"Q.   Was he employed during summers. After he got into high school, was he employed during summers? A. No, he stayed in the Falls to finish this year of 1949. Then he came here the fall of 1950—I mean the fall of 1949.

"Q.   He had no earnings then prior to the time he went to work for the F. & S. Company? A. No. He would have went to work if somebody would have hired him, but at that age— he was only 16, and couldn't get a job. We tried to see if we could get something for him."

Thus was John Leo who had not yet attained his eighteenth birthday actually dependent upon his father whose obligation it was, under the law, to give his son both support and suitable education. Under the facts shown by the record before us both the federal law and the state law would recognize that the decedent was a dependent minor whom the father was entitled to list and claim as a dependent upon reporting his income and when making the deductions allowed for actual dependents.

The father testified that at the time the decedent obtained the job with the contracting company, the father and son "agreed he would give us $40.00 a week, that is to help pay on furniture we had bought, and rugs and so forth, we had to have when we first moved here, and between us, we had decided this fall we might buy a new automobile, which we have to have because we make several trips to the Falls, and they might call me in the middle of the night, from the hotel, or in the morning or late at night, and I have to have an automobile to get up there."

The son had no pay day between the time he entered the employ of the employer company and the happening of the fatal accident and the record is undisputed that up to and including the day of his death the decedent actually had contributed

nothing whatever toward the support of either his father, his mother or the family.

The case of Betor v. National Biscuit Co., supra, is here controlling. There as in the instant case the claimant parent failed to establish as a fact that either parent was actually dependent upon the decedent at the time of his injury.

The cases of Edwards v. Butte & Superior Mining Co., 83 Mont. 122, 270 Pac. 634, and Ross v. Industrial Accident Board, 106 Mont. 486, 80 Pac. (2d) 362, are not in point nor are they authority for holding that the claimants herein have shown themselves to be major dependents of their decedent minor son.

Each of the claimants in the instant case was but 41 years of age at the time of the accident and there is no evidence to show that either claimant is crippled,—in ill health or incapacitated in any manner.

In the Edwards case, supra, the mother of an eighteen year old son accidentally killed during the course of his employment in a Butte mine was properly held to be a major dependent. Her evidence showed that at the time of the accident the mother was a widow with five children, three of whom were under age; that the mother was physically frail; that the condition of her health rendered it impossible for her to accept employment or to do any work other than that requisite in the conduct of her household; that prior to going to work in the mine the decedent had worked and earned $7 to $15 per week which he had contributed to the support of the family; that the mother had no property nor means of support save a widow's pension of $16 per month from the Federal Government and such sums as were contributed by the decedent and two of his brothers; that a son Deloyd, aged 15 years, attended school, sold papers and did odd jobs earning as much as $7 per week, intermittently, which he gave to his mother for the family support; that another son Edward aged 12 years, was in poor health and earned nothing and that the oldest son Orlando, was past his majority and paid his mother $40 per month for board and lodging.

In the Ross case, supra, the father and mother of a 23 year

old unmarried son, accidentally killed in the course of his employment were properly held to be major dependents. Their evidence showed that they were the parents of ten children; that at the time of the accident three minor children aged 16, 15 and 13 years respectively, were living with the claimant parents in their home; that the father, then aged 55 years, had for years been afflicted with rheumatism rendering him unable to do any work; that the mother, then aged 50 years, weighed 350 pounds and was afflicted with heart trouble; that both the father and mother were then on federal relief and receiving $35 per month; that they required $100 per month for the support of themselves and their minor children; that for about ten years prior to his death the decedent lived with his parents most of the time and worked in the beet fields with his father; that the father collected his son's earnings for all such work; that in one year the father collected as much as $1,200 earned by the decedent but that generally the amount collected was much less; that at times when there was no work to be had at home and extending over a period of years the decedent obtained employment elsewhere and that when so employed he frequently enclosed varying sums of money in the letters which he sent to his parents or to his sister which money was used to purchase materials for the making of clothes for the children then living with the parents and that the decedent contributed to his parents all the money that he had been able to earn except that which barely gave him the necessaries of life.

Unlike the Edwards case and the Ross case the evidence in the instant case wholly fails to show the claimant parents to have been actually dependent upon their son at the time of his fatal injury. In this respect this appeal is like that in the Betor case wherein this court said [85 Mont. 481, 280 Pac. 643] : ''Of course, all of us could use more money to advantage'' but held that regardless of the fact that the parent could use the money to good advantage ''such conditions do not fulfill the requirement of the statute.'' R. C. M. 1947, sec. 92-414.

The power to define is the power to legislate. In the exercise

of such power the legislature of this state by express statutory enactment defined the term "major dependent" as same is employed in the Workmen's Compensation Act. Such statutory enactment has become and now is the law of this state. R. C. M. 1947, sec. 92-414. The judges of this court should take such definition and such law as they find the same for the statute is so simple, plain and clear as to defy construction. Under the guise of giving a liberal construction to a simple statute which needs no construction we should not rewrite the statute and substitute our own definition for that enacted by the legislature. See, Constitution of Montana, Art. IV, sec. 1; R. C. M. 1947, sec. 93-401-15.