CLARENCE E. FREEMAN'S (dependent's) CASE.

Suffolk.   March 13, 1919. — June 24, 1919.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act*, Dependency, Procedure: appeal, finality of findings of Industrial Accident Board. *Evidence*, Competency, Of intent.

At a hearing before a single member of the Industrial Accident Board of a claim by a mother for compensation for the death of her son, when sixteen years of age, from injuries arising out of and in the course of his employment by a subscriber under the workmen's compensation act, there was evidence that the son had come to Boston to go to school and work out of school hours, and before coming had told his mother that "he would send all his money home except his board and money for his clothes . . . for her support." Previous to coming to Boston he had lived at home and had paid his mother his wages, which were substantial in amount. His father was not in good health and was not able to support his family, consisting of his wife and five children. The mother testified that she was dependent upon the son for support. The son began going to high school in Boston, but, when he found that tuition was charged him, he left school and went to work for the subscriber, where he received fatal injuries on the second day of his employment. At that time he had received no wages from his employer and had not sent his mother any money since he had come to Boston. The mother did not know that the son had begun to work until she received news of his death. The single member of the board found that the mother was partially dependent upon the son. The full board confirmed this finding. *Held*, that,

(1) Under the provisions of the act, the question of dependency was to be determined in accordance with the fact, as the fact might be at the time of the injury, and that the finding of partial dependency could not be presumed erroneous in law;

(2) In view of all the facts, the circumstance, that the mother did not know that the son was working and that his intent was to send her the proceeds of that particular employment as fast as earned, was not in itself decisive;

(3) Evidence was admissible respecting the intent of the son to send to his mother the part of his wages which remained after paying for his board and clothing.

In the proceeding above described, it further appeared that, at the time of receiving the fatal injuries, the employee's weekly wages were $12; that the amount he actually had earned during the preceding year was $510, and that he had sent to his mother during that time $350. There was some evidence that the employee received, besides the $510, his board, but there was no such finding by the single

member or by the full board, nor any request for such a finding. There also was evidence that, of the money that the employee sent his mother, the mother spent a part for his expenses. The board made no finding upon this subject. *Held*, that,

(4) The "annual earnings of the deceased at the time of his injury" should be computed by adding together his actual earnings during that period, and not by multiplying his weekly wages at the time of his injury by fifty-two;

(5) No question was saved upon the record as to whether the wages earned by the employee during the year preceding his injury were affected by the fact that for a part of that time he received his board as well as money compensation;

(6) The amount of money contributed by the employee to his mother during the twelve months preceding his injury was a question of fact upon which the finding of the Industrial Accident Board was final;

(7) Expenses incurred by the mother on account of her minor son, while pertinent in determining the question of dependency, were irrelevant in ascertaining the amount of compensation to be paid after the fact of dependency had been established.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board, in part affirming and adopting and in part revising the decision of a single member of that board, awarding compensation to Gertrude Freeman, mother of Clarence E. Freeman, a deceased employee, under Part II, § 6, of the act, as one partially dependent upon the employee at the time of his injuries.

The material portion of Part II, § 6, is as follows:

". . . If the employee leaves dependents only partly dependent upon his earnings for support at the time of his injury, the association shall pay such dependents a weekly compensation equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased at the time of his injury."

Findings of the single member of the Industrial Accident Board, material to this decision, were as follows:

"The claimant was a dependent within the meaning of Part V, § 2, and partially dependent upon her son, the decedent, at the time of his injury and death, under Part II, § 6 of the act.

"The claimant received a total sum of $350 from her son for her support during the year preceding the date of the injury. Previous to leaving home, shortly before the occurrence of the fatal injury, the employee had talked with his mother relative to sending her money for her support. He promised, when he went to work, that

he would send her all his earnings except his board and money for his clothes. On the day previous to the fatality, he accepted employment from the subscriber at an average weekly wage of $12 and advised Mrs. Annie L. Billings and Merle Billings that it was his intention to pay his board, $5, out of his earnings and send the balance home. . . .

"(b) As to the basis upon which dependency shall be computed, the board member is of opinion that the insurer is obligated to pay the claimant 'a weekly compensation equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed (during the year preceding the date of his injury and death, $350) . . . bears to the annual earnings of the deceased at the time of his injury.' The 'annual earnings of the deceased at the time of his injury' are $624; that is fifty-two times his average weekly wages of $12. The amount which would have been due the claimant, had she been wholly dependent, would be $8 a week for a period of five hundred weeks. Since she is partially dependent, the amount due her is 350/624 of $8 or $4.49 per week, for a period of five hundred weeks, subject to the provisions of the act."

Appended to the report of the single member of the board was a report of all the material evidence. The insurer asked the single member to make two rulings as follows:

"1. The employee left no dependents wholly or partially dependent upon his earnings for support at the time of his injury.

"2. There was no dependency in part at the time of the injury."

These requests were refused.

The full board affirmed and adopted the findings and rulings of the single member, except that they revised the decision in the paragraph above quoted and designated "b," finding and ruling instead as follows:

"The 'annual earnings' of the decedent at the time of his injury were the sums earned by him during the year immediately preceding the date thereof, which are shown by the record to be as follows: During the fall of 1917, $150; during the winter of 1917–18, six weeks, $108; during the summer of 1918, $250; and one day's employment, for subscribers, $2; total, $510.

"The employee's contributions to the support of his mother during the year prior to the date of his injury and death were $350.

Therefore, the insurer is obligated to pay the claimant 'a weekly compensation equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed [$350] . . . bears to the annual earnings [$510] of the deceased at the time of his injury.' The employee's average weekly wages at the time of his injury and death were $12; the amount due a person wholly dependent under Part II, Section 6, would be $8; therefore, the amount due the claimant, who is partially dependent, is 350/510 of $8, or $5.49 per week, for a period of five hundred weeks, subject to the provisions of the act."

The findings and decree of the board were confirmed by the Superior Court, and the insurer appealed.

*G. Gleason*, for the insurer.

*J. J. Scott*, for the claimant.

RUGG, C. J. The deceased employee, a boy sixteen years of age, came to Boston early in September, 1918. He began going to high school, but when he found that tuition was charged him he left school, went to work and on the twenty-sixth of the same month received fatal injuries arising out of and in the course of his employment. This was the second day of his employment.

1. There was evidence sufficient to support a finding of partial dependency by his mother on the earnings of the deceased. Before coming to Boston he had lived at home and had paid to his mother his wages which were substantial in amount. His father was not in good health and testified that he was not able to support his family, consisting of his wife and five children. The mother testified that she depended upon the wages of the deceased for support; that "Prior to leaving home, Clarence talked with her relative to sending her money for her support. He said that when he went to work he would send all his money home except his board and money for his clothes. . . . He told her he would send it to her for her support." He went to Boston to go to school and to work out of school hours. The mother did not know that the deceased had begun to work until she received word of his death, and he had sent her no money since he came to Boston. The question of dependency upon the earnings of a deceased employee under the workmen's compensation act is to be "determined in accordance with the fact, as the fact may be at the time of the injury." St. 1911, c. 751, Part II, §§ 6, 7; Part V, § 2. *Bott's Case*, 230 Mass. 152. The fact was

that at the time of his injury the deceased was at work for wages, which it was his declared purpose as well as his filial duty to send home. The circumstance that the mother did not know that the son was working and that his intent was to send her the proceeds of that particular employment as fast as earned is not by itself decisive. A simple expression of purpose to contribute to support, unaccompanied by any actual contribution after reasonable opportunity, would not constitute dependency. The case at bar, however, in substance and effect discloses injury to the employee before his first pay day and before any opportunity had arisen to make contribution to the support of the dependent out of the wages of the particular service and substantial contributions from the earnings of earlier work. Partial dependency may be found even though the dependent might have subsisted without the aid. *McMahon's Case*, 229 Mass. 48. The deceased was a minor; hence a duty rested upon him to turn his wages over to the parent entitled thereto, and a correlative right to receive such wages vested in the parent. *Tornroos* v. *Autocar Co.* 220 Mass. 336. The finding of partial dependency by the mother cannot be pronounced erroneous in law. *Kenney's Case*, 222 Mass. 401.

2. There was no error, under the circumstances here disclosed, in the admission of evidence respecting the intent of the deceased to send to his mother the part of his wages which remained after paying for his board and clothing. *Carriere* v. *Merrick Lumber Co.* 203 Mass. 322, 327. *Marcy* v. *Shelburne Falls & Colrain Street Railway*, 210 Mass. 197, 199.

3. The "annual earnings of the deceased at the time of his injury" in Part II, § 6, are to be ascertained by reference to the same factors as are "average weekly wages" in Part V, § 2, unless inapplicable under all the circumstances. It would be a strained construction to interpret "annual earnings" with reference only to the wages earned at the moment of injury and to calculate other payments under the act upon the footing of "earnings of the injured employee during the period of twelve calendar months immediately preceding the date of injury." The facts at bar presented a case for the ascertainment of "annual earnings" by reference to the wages received during the twelve calendar months immediately preceding the injury. See *Gillen's Case*, 215 Mass. 96.

4. No question was saved on this record to the point whether

the wages earned by the deceased in the year before his death were affected by the fact that for a part of the time he received his board as well as money compensation. Hence no decision of that matter is required.

5. The amount of money contributed by the deceased to his mother during the twelve calendar months before his injury was on this record a pure question of fact, on which the finding of the board is final. *Pass's Case,* 232 Mass. 515.

6. Expenses incurred by the parent on account of the son are pertinent in determining the fact of dependency, but irrelevant in ascertaining the amount of compensation to be paid after the fact of dependency has been established. *Dembinski's Case,* 231 Mass. 261. No error is apparent in this particular.

*Decree affirmed.*