## AMERICAN SMELTING & REFINING COMPANY v. IN-
## DUSTRIAL COMMISSION OF UTAH et al.

No. 4459.   Decided November 5, 1926.   (250 P. 651.)

*Bagley, Judd & Ray,* of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

FRICK, J.

Plaintiff made application in the usual form for a writ of review to annul an award made pursuant to our Industrial Act. (Comp. Laws 1917, §§ 3061-3165) by the Industrial Commission of Utah, hereinafter called Commission, in favor of one Riwa Kawate, a resident of Japan and the widow of one Imazo Kawate who was accidentally killed on the 15th day of September, 1924, in the course of his employment while in the employ of the plaintiff.

The facts upon which the award is based are not disputed. Indeed, they are either stipulated or there is no conflict whatever. It appears from the record certified up by the Commission that in 1892 Riwa Kawate, hereinafter called the applicant, and the deceased, intermarried in Japan and that they thereafter continuously until the death of the deceased continued to be husband and wife. In 1900 deceased came to the United States, leaving his family,

consisting of the applicant, two small daughters, his mother, and a sister, in Japan. One of the daughters died during childhood. The deceased, after arriving in this country, worked as a section hand in Wyoming until in 1916 or 1917, when he came to Utah and at the time of his death he was in the employ of plaintiff as a common laborer earning a daily wage of $3.35. Soon after arriving in this country the deceased commenced sending the applicant money. In most of the years commencing with 1900 and up to 1916 or 1917, he sent the applicant several amounts in each year so that during those years, according to the evidence, he had sent her the aggregate sum of $817.19. As before stated, in 1916 or 1917 the deceased came to Utah and the contributions for some unexplained reason ceased until in January, 1922, when he sent the applicant $500, and that after that, in 1924, he sent an additional sum of $135 through a friend, but which the applicant did not receive until the spring of 1925, after the death of the deceased. The deceased had thus contributed to the applicant from the time he arrived in the United States until his death the total sum of $1,452.19, the last $635 of which was sent during the last 2½ years of his life. It also appears from the evidence that the applicant rented what was called a small farm from which she derived some income, so that she in fact was only partially dependent upon the deceased for the support of herself and the family. It also appears that the surviving daughter was married and was being supported by her husband. The mother of the deceased was, however, quite old and had to be supported, while the sister was deaf and dumb.

Upon substantially the foregoing facts in addition to jurisdictional facts not in question the Commission awarded the applicant a weekly allowance of $6.41 for a period not exceeding 312 weeks. The plaintiff was ordered by the Commission to pay all the payments that had accrued up to the time of the hearing in a lump sum and the remainder in quarterly installments. The Commission also allowed $150 additional as funeral expenses.

Plaintiff contends that the award is contrary to law and is not supported by any substantial evidence, and hence should be annulled. On behalf of the plaintiff it is vigorously insisted that, in view that the deceased made no contributions from 1916 to 1922, or for a period of approximately six years, the finding of the Commission that the applicant was dependent upon the deceased for support is not supported by any substantial evidence. It may be that under peculiar circumstances plaintiff's contention might have some force. It does not follow, however, that in every case where a considerable length of time intervenes between contributions that there is no substantial evidence that would support an award. No doubt, such depends upon the circumstances and conditions which surround or affect the parties. Take this case for example. Here the deceased left his family in a foreign land. The applicant, as she testified, remained there in charge of the members of the family, some of whom, by reason of old age or some other affliction, were practically helpless. The deceased was only a common laborer whose daily wage was quite moderate during all of the time he made contributions to the applicant. Under such circumstances large contributions were not to be expected. In this connection it should be remembered that the applicant lived in a foreign land where the standards of living are far less expensive than they are in this country. According to the foreign standards of living the $1,452.19 practically amounted to the equivalent of $3,000. If we keep in mind, therefore, the difference between the purchasing value of money in Japan as compared with this country, the deceased contributed approximately $3,000, over $1,200 of which was contributed during the last 2½ years of his life. If a common laborer in this country had contributed that amount to an American family during the last 2½ years of his life, no one, we think, would contend that the contributions should be disregarded as is contended by plaintiff here. It is, however, insisted that the contributions were so irregular and that such a long interval elapsed between the year 1916 or

1917, when the last contributions were made and January, 1922, when the next one was made, that as a matter of law it should be held that the contributions wholly failed, and that the applicant, within the purview of our Industrial Act, received no support whatever from the deceased. It seems to us, however, that the mere fact that contributions may cease for a time, and even for a considerable period of time, standing alone, is not conclusive that a man with a family in a foreign country has necessarily abandoned his family and left them to shift for themselves. The evidence is to the effect that the deceased frequently wrote to his wife, and especially during the last 2 years of his life, that he expected to return to Japan and in the near future. There is, therefore, nothing in the record from which it can be inferred that the deceased had abandoned or intended to abandon his family. It is a matter of common knowledge that in April, 1917, this country became involved in the World War, and that from that time until peace was restored all ordinary communications between this and foreign countries lying to the east had not only been interrupted, but in many ways had entirely ceased. The mere fact, therefore, that communication may have ceased between a husband in America and his wife and family in Japan, is not conclusive that the husband intended to abandon his wife and family. Indeed, in this case there are some cogent reasons why such was not the case. In view of the vastness of the conflict, it required much time to restore ordinary means of communication between the inhabitants of the different countries and to make such communication reasonably safe. The deceased thus remitted 1,000 yen in Japanese money, or the equivalent of $500 in American money, to the applicant in 1922. In this connection it must also be kept in mind that his daily earnings were small and he must therefore have saved his earnings for a considerable length of time in order to accumulate the $500. That amount was, however, followed by a further remittance of $135, or 270 yen, which occurred very shortly before his death and which was not

received by the applicant until after his death. The inference is reasonably clear, therefore, that there must have been some cause or circumstances over which the deceased had no control which caused the long interval between the regular remittances from 1900 to 1916, and the large one in January, 1922. In view of the facts and circumstances there always was some reasonable basis upon which to rest a belief that the deceased intended to continue to make such contributions for the support of the applicant and the family as circumstances would permit him to do. The mere fact, therefore, that there was a period of time during which no contributions were made, is not conclusive in this case that an abandonment was intended by the deceased. Moreover, the contributions continued to be made practically up to the time the deceased received his fatal injury and thus substantially conformed to the provisions of our Industrial Act.

We are of the opinion that, in view of the facts and circumstances, it cannot be said that the award made by the Commission is not supported by some substantial evidence; nor can we hold as a matter of law that the award is contrary to law.

The writer desires to state, however, that, as he views it, it would have been more satisfactory if the Commission had found that the applicant was only partially dependent upon the deceased, as that would have been strictly in accordance with the facts and circumstances of this case. In this connection it must, however, also be conceded that, if the Commission had made such a finding, it, nevertheless, under our statute, had the power to award the full amount it did award, and hence we cannot annul the award as being unsupported by any substantial evidence or as being contrary to law.

The award is affirmed, with costs.

GIDEON, C. J., and THURMAN, CHERRY, and STRAUP, JJ., concur.