Hattie Alexander *v*. State Compensation Commissioner

(No. 7490)

Submitted January 11, 1933.   Decided January 17, 1933.

*Bias & Lawson,* for appellant.

*H. B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondent.

Maxwell, President:

Claimant has been granted an appeal from an order of the compensation commissioner refusing her compensation on the ground that she was not a dependent within the meaning of the statute.

James Alexander, a son of claimant, was killed July 2, 1931, while in the course of his employment in a mine of the Morrison Coal Company at Glen Morrison in Wyoming County. His home was at Huddy, Kentucky, where he had resided with claimant from June, 1930, until the spring of 1931.   He

worked at Mead, West Virginia, for two months immediately after he left Huddy. He had worked at Glen Morrison for approximately ten days before his death. He was married but his wife was denied compensation because she had deserted him in 1930 and thereafter was not dependent upon him. It is not disputed that while residing with claimant at Huddy, deceased contributed about $60.00 monthly to the support of claimant and his three younger brothers. His father had died in 1927.

After deceased left Huddy he made only two contributions to the support of claimant. He sent her $10.00 March 15, 1931, and gave her $20.00 in May, 1931, while at home on a visit. It appears that while deceased resided with claimant, one of his adult brothers contributed a few dollars per month also to the support of the family and that, after deceased left Huddy, claimant's only means of support was that contributed by the brother and a few dollars paid to her by an occasional boarder.

Deceased's earnings for the few days he was employed by the Morrison Coal Company immediately before his death amounted to $35.68. It does not appear what he earned while employed at Mead.

Where an employee dies of injuries received in the course of and resulting from his employment, not survived by a dependent widow or child, his mother may be entitled to compensation, if, "at the time of the injury causing death", she was dependent in whole or in part upon the earnings of her son for her support. Code 1931, 23-4-10 (f), (g). This case must be weighed in the light of the words just quoted. Was James Alexander's mother dependent upon him at the time he received his fatal injury? It is conceded that she was at least partially dependent upon him when he left her home at Huddy, Kentucky, about four months before his death, but it is urged that because the deceased was not making contributions to her immediately prior to his death, her status of dependency (or partial dependency) had terminated.

Dependency should not be determined on such restricted basis. A good illustration of this proposition is found in *Gregory* v. *Standard Oil Company of Louisiana*, (La.) 91 So. 717. A young man of seventeen had been living on a small

farm with his parents who were in needy circumstances and had "contributed his bone and sinew, the strength of his vigorous young manhood, to the cultivation of the little farm which his father had rented." In the fall of 1919, after the harvesting of the crops for the year, the young man, with the consent of his parents, went elsewhere and obtained employment. One month later, while crossing a small lake in going from his boarding house to his work, he was drowned. Before leaving home, he told his parents and their landlord that he would send his parents $35.00 per month out of his wages, but he did not thereafter make any remittance to them. The defense was that the parents "were not actually dependent on their son to any extent at the time he was drowned, within the intendment and meaning of the compensation statute." The court rejected this defense and held that the facts clearly brought the claimants within the purview of the statute. Compensation was awarded. The court said: "The phrase, 'at the time of the injury and death,' cannot be so construed as to mean at the very moment of the death to the employee. It is broad enough to cover a reasonable period prior to the death, as well as a reasonable expectation of pecuniary assistance during the continuance of the son's life." As appears from that case and from others found in the reports, a reasonable expectation on the part of the parent or parents of pecuniary benefits from the continuance of the life of the son is an important factor. Other cases apropos: *Tintic Milling Co.* v. *Industrial Commission*, 207 Pac. (Utah) 1114; *Pittsburgh, etc., Ry. Co.* v. *Collard*, 170 Ky. 239, 185 S. W. 1108; *Pacific Employer's Ins. Co.* v. *Woland*, 255 Pac. (Cal.) 764, and *Southern Surety Co.* v. *Hibbs*, 221 S. W. (Tex.) 303.

We find the matter thus discussed in standard texts: "Where a son has been in the habit of regularly contributing to his parent's support, a temporary cessation of contributions, when the son changed places of employment, does not preclude an award, and a finding that had death not intervened the son would have continued his contributions was sustained by the evidence." 2 Schneider on Workmen's Compensation (2nd Ed.), p. 1263. "The purpose of the statute is to provide the workman's dependent in the future with something in substitution for what has been lost by the workman's death,

and, consequently, to establish dependency the application for compensation must show that he or she had reasonable grounds to anticipate future support from the decedent. This reasonable expectation of continuing or future support and maintenance seems to be the true criterion as to who are dependents." 28 Ruling Case Law, p. 771.

In the case at bar, was there basis for reasonable expectation on the part of the claimant that her son, James, would continue to contribute to her support? We do not find such basis satisfactorily established by competent evidence. The claimant testifies about a purported letter received by her from her son a few days before his death in which he is supposed to have said that he was going to obtain a house in the vicinity of his work and bring his mother and the three children there so that they could all live together and he could furnish the support for the family. But the letter itself was not offered in evidence nor made a part of the record, and therefore, of course, is not before us. While reasonable liberality should obtain in dealing with cases arising under the workmen's compensation law and while the strictness of procedure which obtains at the common law will not be adhered to, it does not follow that plain, practical, and fundamental rules of evidence should be ignored. The letter is the best evidence of its own contents and should be in the record.

We are of opinion to send the case back to the commissioner for further development, and for a finding to be made by him on the record when further developed and supplemented. *Bowling* v. *Commissioner*, 112 W. Va. 604, 166 S. E. 9.

We therefore reverse the finding of the commissioner and remand the case for further development.

*Reversed and remanded.*