ROSS ET AL., RESPONDENTS, *v.* INDUSTRIAL ACCIDENT BOARD, APPELLANT.

(No. 7,765.)

(Submitted April 19, 1938. Decided April 28, 1938.)

[80 Pac. (2d) 362.]

488

*Mr. M. J. Thomas,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. E. G. Toomey,* of Counsel for Appellant on Petition for Rehearing.

*Mr. Lawrence E. Gaughan,* for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Dale V. Ross, an unmarried man, was accidentally injured on May 28, 1935, while in the employ of Morrison & Welch, of Billings. He was then of the age of 23 years. He died the following day as the result of the injuries. His employer was enrolled under Plan 3 of the Workmen's Compensation Act. At the time of sustaining the injuries the decedent was earning and receiving $20 per week as a salary. His father and

mother applied to the Industrial Accident Board for compensation, claiming the right thereto as major dependents under section 2866, Revised Codes. Failing there, both on their original application and on their application for rehearing, they appealed to the district court, where upon the same record, judgment went in their favor. The court found the claimants to be dependents and allowed compensation at the rate of $10 per week for the duration of the dependency, not exceeding the statutory period of 400 weeks. (Sec. 2915.) The appeal is from the judgment.

The only question arising on the appeal is whether, under the evidence, the claimants are major dependents within the meaning of section 2866, reading as follows: " 'Major dependent' means if there be no beneficiary as defined in the preceding section, the father or mother, or the survivor of them, if actually dependent upon the decedent at the time of his injury, then to the extent of such dependency, not to exceed, however, the maximum compensation provided for in this Act."

The evidence in the case is undisputed. Neither the employer nor the board introduced any testimony in addition to that before the board. The case hinges upon the legal sufficiency of claimant's evidence to establish their status as major dependents.

The record before the board on the first hearing shows that claimants reside at Fort Morgan, Colorado, and are the parents of ten children, including Dale V. Ross; three minor children aged 16, 15 and 13, respectively, were living with them at their home at the time of Dale's death; six had families of their own and therefore were unable to contribute to their parents' support. The father, Edward E. Ross, 55 years of age, has for a few years been afflicted with rheumatism and is unable to do any work. Viola Ross, the mother, 50 years of age, weighs 350 pounds and is afflicted with heart trouble. Both have been on federal relief since the fall of 1934, receiving $35 per month. They need $100 per month for their support and the support of their minor children.

For about ten years prior to his death, Dale lived with his parents most of the time and had worked in the beet fields with

his father. For all of such work his father, Edward E. Ross, collected all of the money, amounting one year to as much as $1,200, but generally it was much less. When Dale was able to find employment away from home during the seasons when there was no work in the beet fields, he would frequently enclose a five dollar bill, or a lesser sum of money, in letters sent to the parents or to his sister, who lived near the father and mother, and she would buy material and make clothes for the children living with their father and mother, the claimants here. This practice extended over a period of years.

Dale had been in Billings from February, 1935, until the time of his death. He was unemployed while there until May 3, 1935. He had received but one pay check under his employment with Morrison & Welch amounting to $39. Of this he paid $24 for board and room to his brother-in-law, Milo Gorley, with whom he was living while in Billings. At the time of his death he had seven dollars and some cents on his person, the remainder, or about eight dollars, having been spent for clothing and other things for himself. He sent no part of the $39 to his parents, but told Mr. Gorley that he was going to send all of his next check to them and thereafter every other check.

On rehearing claimant Edward E. Ross made affidavit on May 2, 1936, that without the help of Dale he was unable to procure or take a contract to work beets during the year 1936; that Dale contributed to claimants all the money that he was able to earn except that which "barely gave him the necessaries of life;" that Dale stated to him and to his mother when he left home in the summer of 1934 "that when he was able to obtain a job that paid him wages that he would send every cent home that he could save." He also stated in his affidavit, "that this affiant and the said Viola Ross relied upon the support they expected to receive from the said Dale Ross as the federal relief they were obtaining temporarily was not enough to feed, clothe, or keep the said claimants and their minor children."

The board expressly declined to give any value to the statement testified to by Dale's brother-in-law to the effect that Dale intended to send every other check to his parents, because it

was hearsay. It also found as a result of the first hearing that there was no evidence showing that Dale had ever made any promise to claimants that he would contribute to their support out of his earnings. It found that the earnings of Dale in the beet fields were used for the purpose of paying his board and room while living with his parents, and that in fact such earnings were not sufficient to pay his own living expenses, much less to aid his needy parents. The board denied compensation.

In its order after the rehearing the board condemned the statements in the affidavit of Edward E. Ross, to the effect that Dale had stated to claimants at the time he left their home in 1934, that, when he was able to procure employment, he would send every cent home that he could save, as untrue, giving as its reasons "that the claimants had ample opportunity to present previous to the decision of the board any statement of any promise made by their son to them, and none was presented." It adhered to its first opinion to the effect that Dale was dependent upon his parents instead of them being dependent upon him to any extent.

The district court found, as above noted, that the claimants ██ are major dependents, within the meaning of section 2866, Revised Codes. Appellant contends that the court's action was erroneous because the weight of the evidence and the credibility of the witnesses are for the board to determine, and its conclusions on fact questions should not be disturbed by the courts. Where there is substantial conflict in the evidence the general rule contended for by appellant is correct. But where, as here, the evidence is not in conflict, the case comes before the court in the nature of an agreed statement of facts, leaving but a question of law for determination. (*Birdwell* v. *Three Forks Portland Cement Co.*, 98 Mont. 483, 40 Pac. (2d) 43; *Ryan* v. *Industrial Accident Board*, 100 Mont. 143, 45 Pac. (2d) 775.)

It is true, as contended for by appellant, that the board is not obliged to accept testimony because it is not contradicted by other witnesses. (*Reid* v. *Hennessy Merc. Co.*, 45 Mont. 383, 123 Pac. 397.) Courts have the right to disregard evidence if it is improbable or incredible. (*Jeffrey* v. *Trouse*, 100 Mont. 538,

50 Pac. (2d) 872.) But they cannot disregard uncontroverted credible evidence. (*Sylvain* v. *Page*, 84 Mont. 424, 276 Pac. 16, 63 A. L. R. 528; *Nichols* v. *New York Life Ins. Co.*, 88 Mont. 132, 292 Pac. 253; *Piersky* v. *Hocking*, 88 Mont. 358, 292 Pac. 725.) And the board, as a fact-finding tribunal, is bound by the same rule. (*Johnson* v. *Johnson*, 92 Mont. 512, 15 Pac. (2d) 842; *Pierstorff* v. *Gray's Auto Shop*, (Idaho) 74 Pac. (2d) 171; *Stepaneck* v. *Mark Twain Hotel Co.*, (Mo. App.) 104 S. W. (2d) 761.)

There is nothing inherently incredible or impossible about the assertion in the affidavit of Edward E. Ross that Dale told claimants when he left home that he would send them all the money he could save. On the other hand, the probability of such an assertion is attested by the previous practice and custom of Dale to send money home when he was working and earning wages away from home. Unimpeached evidence, supported by all the circumstances, should not be condemned as untrue. (*Harwood* v. *Scott*, 65 Mont. 521, 211 Pac. 316.)

Generally, too, we recognize that, in passing upon the credi- ██ bility of witnesses, the board occupies an advantage superior to that of the trial court or this court, when the review in the district court and here is upon the record alone. But that general rule does not apply where, as here, the evidence which is excluded as untrue is in the form of an affidavit. (*Newell* v. *Whitwell*, 16 Mont. 243, 40 Pac. 866; *Gibson* v. *Morris State Bank*, 49 Mont. 60, 140 Pac. 76.)

Was the board warranted in disregarding the statement of ██ Gorley as to what Dale told him with reference to his intention to send his next check and every other one thereafter to his parents? The board is not bound by the technical rules of evidence. (Sec. 2938, Rev. Codes.) Hearsay may be ac- ██ cepted or rejected in the discretion of the board. (71 C. J. 1072.) However, the statement here came within an exception to the hearsay rule. The point at issue was the state of mind of Dale with reference to his intention, or lack of it, to contribute to the support of his parents. This statement was admissible under section 10511, as part of the *res gestae*. It con-

stituted a part of the transaction in dispute, i. e., the state of mind of Dale regarding the use he intended to make of his money and, particularly, whether any part of it was proposed to be sent to his parents. Standing alone, the statement might not have been sufficient to prove the purpose to thus contribute to the support of the parents. But it was admissible, along with the other facts and circumstances, as some evidence of a purpose to continue the practice theretofore pursued by him. (*In re Freeman*, 233 Mass. 287, 123 N. E. 845; *LaSalle County etc. Coal Co.* v. *Industrial Com.*, 356 Ill. 421, 190 N. E. 687; *Texas Employers' Ins. Assn.* v. *Arnold*, (Tex. Civ. App.) 62 S. W. (2d) 609; *Lloyd* v. *Powell Duffryn S. Coal Co.*, (1914) A. C. 733; *Strange* v. *Donohue*, 4 Ind. 327; *Bakers Consulting Bureau* v. *Julian*, (Ind. App.) 6 N. E. (2d) 737; *Koenig* v. *Bryce*, 94 Ind. App. 689, 180 N. E. 682.)

The United States Supreme Court, in *Mutual Life Ins. Co.* v. *Hillmon*, 145 U. S. 285, 12 Sup. Ct. 909, 26 L. Ed. 706, stated the applicable rule as follows: "A man's state of mind or feeling can only be manifested to others by countenance, attitude, or gesture, or by sounds or words, spoken or written. The nature of the fact to be proved is the same, and evidence of its proper tokens is equally competent to prove it, whether expressed by aspect or conduct, by voice or pen. When the intention to be proved is important only as qualifying an act, its connection with that act must be shown, in order to warrant the admission of declarations of the intention. But whenever the intention is of itself a distinct and material fact in a chain of circumstances, it may be proved by contemporaneous oral or written declarations of the party. The existence of a particular intention in a certain person at a certain time being a material fact to be proved, evidence that he expressed that intention at that time is as direct evidence of the fact, as his own testimony that he then had that intention would be. After his death, there can hardly be any other way of proving it; and while he is still alive, his own memory of this state of mind at a former time is no more likely to be clear and true than a bystander's recollection of what he then said."

Also, aside from the testimony ignored by the board as hearsay, there was still sufficient evidence to warrant a finding of major dependency when we remember that there was evidence showing that Dale spent very little money on his own account. There was evidence that during about seven years he worked in the beet fields Dale did not draw over $50 for his own use. The cost of his board and room while living with his sister in Billings was such as to enable him to save at least one-half of his salary, and according to his statement to the parents he intended to give them all that he could save.

Was the court warranted in finding that claimants were de- pendents? The fact that claimants were dependent upon someone was definitely established; hence the question arises, Is the poverty and need of the parents the sole criterion by which to determine their dependency, and, if not, to what extent are the contributions of the deceased important on that issue?

Claimants' only source of income so far as the record discloses, aside from the contributions of the deceased, is the sum of $35 from federal relief. They need $100 per month in order to support themselves and their minor children; hence they are dependent to the extent of $65 per month on someone.

The award here of $40 per month does not exceed the extent of their dependency. The fact that decedent had not regularly contributed that amount is immaterial. His contributions while working in the beet fields were substantial. Circumstances indicate that he, because of his inexpensive habits, might have contributed as much as $40 per month under his employment at the time he was killed. While unemployed, of course, he could not contribute. The fact that he had only been employed a short time preceding his death is of no importance.

In *Edwards* v. *Butte & Superior Min. Co.*, 83 Mont. 122, 270 Pac. 634, compensation was awarded on a less showing of actual contributions than here. There the deceased had contributed earnings from selling newspapers and other intermittent odd jobs. He obtained employment five days before his death and had promised and agreed to give all his earnings to his mother.

For nine months preceding this employment he was confined in the Industrial School at Miles City, and, of course, during that time made no contributions. In that case we adopted the following rule from Honnold on Workmen's Compensation, volume 1, section 70, in determining dependency: "While ordinarily no exact standard for the determination of dependency is prescribed by statute, and it is difficult, if not impossible, to formulate such a standard, it may be said in general terms that a 'dependent' is one who looks to another for support, one dependent on another for the ordinary necessities of life, for a person of his class and position, and that, to be entitled to compensation as a dependent, one need not deprive himself of the ordinary necessities of life to which he has been accustomed, but he cannot demand compensation merely to add to his savings or investments. It follows that dependency does not depend on whether the alleged dependents could support themselves without decedent's earnings, or so reduce their expenses that they would be supported independent of his earnings, but on whether they were in fact supported in whole or in part by such earnings, under circumstances indicating an intent on the part of deceased to furnish such support."

In determining the extent of the dependency when it appeared that the mother was obtaining a pension of $16 per month, this court said: "Claim is made that the evidence shows only partial dependency, and therefore no allowance should be made by the board or the court exceeding the actual extent of the dependency, fixed by the board at $4.61 per week. This argument is fallacious, for it is manifest her pension alone would not support her, and, making allowance for it, her dependency on the deceased exceeded the maximum compensation by the law provided, so that she was actually dependent upon the decedent in amount greater than $15 per week. Add $16 per month to $60 for the same period, and we have $76, less than the amount required for plaintiff's support; so that at the time of the accident she was actually dependent on her son's earnings in an amount exceeding the maximum allowance authorized." (*Edwards Case,* supra.)

The need of the parents is more important than the extent of the contributions. (*Betor* v. *National Biscuit Co.*, 85 Mont. 481, 280 Pac. 641.) A case bearing a strong analogy to this on the facts is that of *Gregory* v. *Standard Oil Co.*, 151 La. 228, 91 So. 717. There, as here, the decedent had received but one pay check under his employment when he was accidentally killed. Out of that check he made no contribution, but paid for his board and supplied himself with clothing. There, as here, the decedent had helped his parents by assisting them in caring for crops. There compensation was awarded to the parents as dependents.

Other cases in principle supporting the award here under similar, though not identical, facts are the following: *Williams* v. *John B. Kelly Co.*, 128 Pa. Super. 228, 193 Atl. 97; *In re Freeman*, supra; *Pittsburgh etc. Ry. Co.* v. *Callard's Admr.*, 170 Ky. 239, 185 S. W. 1108, L. R. A. 1918E, 273; *Ritchie* v. *Indiana State Highway Com.*, 101 Ind. App. 32, 198 N. E. 126; *Crowder* v. *Woodward Iron Co.*, 211 Ala. 111, 99 So. 649; *Alexander* v. *State Compensation Com.*, 113 W. Va. 223, 167 S. E. 589; *Southern Surety Co.* v. *Hibbs*, (Tex. Civ. App.) 221 S. W. 303; *American S. & Ref. Co.* v. *Industrial Com.*, 68 Utah, 383, 250 Pac. 651; *Tintic Milling Co.* v. *Industrial Commission*, 60 Utah, 261, 278, 207 Pac. 1114.

In 28 R. C. L. 770, we find the applicable rule stated as follows: ''In construing the statute, as applied to particular cases, the word 'dependent' should not be given its narrowest nor its most literal meaning, when considered in connection with the Act in question, its aims and objects. As a very general proposition, it may be said that a dependent is one who looked to or relied on the decedent for support and maintenance. Reliance must have been placed upon the deceased employee to provide the applicant for compensation, in some measure or to some extent, with his or her future living expenses. And where this is the case, it is not material that the contributions were made at irregular intervals, or in differing amounts, nor that the money was paid in accordance with the provisions of a contract. The purpose of the statute is to provide the workman's depen-

500

dent in future with something in substitution for what has been lost by the workman's death, and, consequently, to establish dependency the applicant for compensation must show that he or she had reasonable grounds to anticipate future support from the decedent. This reasonable expectation of continuing or future support and maintenance seems to be the true criterion as to who are dependents."

The court was warranted on the record to make the award appealed from. The judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

Rehearing denied June 16, 1938.